ROBERT M. MURPHY, Judge.
| gDefendant-appellant, Chateau Living Center of Kenner, L.L.C. (“Chateau”), appeals the June 2, 2014 judgment rendered by the Office of Workers’ Compensation, District 7, in favor of claimant-appellee Tenshenia Downs (“Downs”) and appellee Injured • Worker’s Pharmacy, LLC (“IWP”), ordering Chateau to reimburse IWP for the cost of prescription medications dispensed to Downs, and assessing penalties and attorney’s fees against Chateau. For the reasons that follow, we reverse the June 2, 2014 judgment of the WCJ and render a judgment as provided herein.
FACTUAL BACKGROUND
This appeal arises out of a disputed claim for compensation filed by Downs on August 21, 2013 against her employer, Chateau, for payment of prescription medications issued to her by IWP. Downs sustained an injury to her back within the course and scope of her employment with Chateau on September 20, 2011, when she lifted a patient out of a bed and into a wheelchair. Downs made a claim for workers’ compensation benefits arising out of the incident, which Chateau |saccepted as compensable. As a result, Chateau began paying Downs indemnity and medical benefits, including payment of prescription medications.
Chateau’s third party administrator, Employers Risk Management Services (“ERMS”), was responsible for Downs’ claim and assigned Shiela Dorsey as her claims representative. On October 13, 2011, ERMS selected and approved Car-lisle Medical, Inc. (“Carlisle”), a prescription management company, to provide Downs with the prescription medications prescribed by her treating physician. Accordingly, on December 12, 2011, ERMS sent Downs a letter informing her that Carlisle would be assisting her with her prescription medication needs, and that she would be receiving a Carlisle prescription card to use in obtaining her prescriptions. ERMS further noted that Carlisle was the only approved provider of pharmacy services for her claim.
For several months, Downs used her Carlisle card to fill prescription medications from retail pharmacies, which were paid for by Chateau through ERMS on January 12, 2012, April 4, 2012, May 2, 2012 and July 18, 2012. However, after treating with Dr. Paul Hubbell on July 31, 2012, Downs discontinued using her Car-lisle card to obtain her prescriptions, and instead, began obtaining her prescriptions *878 in August of 2012 via mail order through IWP.
On August 6, 2012, Dorsey received an email from Chateau advising her that IWP had requested information regarding Downs’ prescription medications. On that same day, Dorsey was informed by IWP that it had already provided prescription medications to Downs. Dorsey then advised IWP that it was not authorized to provide prescription medications to Downs. On August 15, 2012, Dorsey sent IWP a letter advising IWP that its invoices for prescription medications were not -approved by ERMS and that IWP was not an authorized provider of medication for Downs.
DDespite this information, the record shows that IWP continued to fill prescription medications for Downs from August of 2012 to March of 2014. In.each instance, IWP sent Dorsey pre-authorization requests for prescription medications that had already been issued to Downs at least one day before the date of its request for pre-authorization. Dorsey sent IWP several letters advising it that it was not authorized to provide prescription medications to Downs, that Carlisle was the approved provider for Downs’ claim, that it had failed to obtain pre-authorization before filling prescriptions, and that no medications billed through IWP would be approved by ERMS.
After Downs filed her disputed claim for payment of the prescription medications issued by IWP on August 21, 2013, Chateau filed an answer and reconventional demand against Downs and IWP on September 23, 2013. In its reconventional demand, Chateau sought a judgment providing that it was entitled to select the provider of prescription medications to Downs, that Downs is required to obtain prescription medications from Carlisle, and that IWP is precluded from asserting a claim for payment of prescription medications provided to Downs, given that it did so without Chateau’s authorization.
The matter proceeded to trial on April 9, 2014, wherein the parties stipulated to the introduction of documentary evidence, including records of IWP, ERMS, and Car-lisle, as well as correspondence from Downs’ counsel. In addition, counsel for Downs and IWP introduced an affidavit from Downs, and counsel for Chateau introduced the deposition transcript of Dorsey. No live witnesses testified at trial. The workers’ compensation judge (“WCJ”) took the matter under advisement and rendered a judgment in favor of Downs and IWP on June 2, 2014. Specifically, the judgment ordered Chateau to reimburse IWP for the prescription medications issued to Downs, without providing a monetary amount to be reimbursed. The | ¡judgment effectively denied Chateau’s re-conventional demand insofar as it orders Chateau to reimburse IWP for the prescription drug expenses it incurred with respect to Downs. The judgment further held that Chateau failed to reasonably controvert Downs’ claim for benefits, and accordingly assessed penalties in the amount of $5,000 and attorney’s fees in the amount of $5,000 against Chateau. From that judgment, Chateau now appeals.
ASSIGNMENTS OF ERROR
On appeal, Chateau raises the following assignments of error:
1. The WCJ erred in finding that Chateau was not entitled to select Car-lisle as the provider of prescription medications to Downs.
2. The WCJ erred in finding that IWP had an enforceable obligation against Chateau and Downs in spite of its failure to comply with La. R.S. 23:1142(B)(l)(a).
*879 B. The WCJ erred in finding that Chateau failed to timely furnish medications to Downs.
4. The WCJ erred in failing to determine the amount IWP was entitled to receive for medications provided to Downs.
5. The WCJ erred in finding that Chateau did not reasonably controvert Downs’ claim for benefits.
LAW AND DISCUSSION

Chateau’s Assignment of Error Number One:

In its first assignment of error, Chateau contends that the WCJ erred in failing to find that it was entitled to choose Carlisle as the provider of prescription medications to Downs.
Factual determinations in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Dean v. Southmark Const., 03-1051 (La.7/6/04), 879 So.2d 112, 118. Under this standard, an appellate court may only reverse a workers’ compensation judge’s factual findings if it finds from the record that a reasonable factual basis for the finding does not |fiexist, or that examination of the entire record reveals that the finding is clearly erroneous. Wilson v. Metropolitan Center, 12-487 (La.App. 5 Cir. 3/13/13), 113 So.3d 261, 266; see also Banks v. Indust. Roofing & Sheet Metal Works, 96-2840 (La.7/1/97), 696 So.2d 551, 556.
The employer’s duty to furnish prescription medications is addressed in La. R.S. 23:1203(A). Under La. R.S. 23:1203(A), “the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.” (Emphasis added).
In Bordelon v. Lafayette Consolidated Gov’t, 14-304 (La.App. 3 Cir. 10/1/14), 149 So.3d 421, the Third Circuit recently addressed the issue of whether an employer is entitled to choose the pharmacy to be used by an injured employee receiving medical benefits. In Bordelon, the claimant, Dr. Bordelon, appealed a judgment wherein the WCJ denied his motion seeking his choice of pharmacy, as well as his demand for penalties and attorney’s fees. Id. at 422-23. After sustaining an on-the-job injury, Dr. Bordelon was receiving medical benefits, including payment of prescription medications, from his employer, Lafayette Consolidated Government (“LCG”). Id. at 422. Dr. Bordelon had been receiving his prescriptions via mail through IWP, when LCG issued Dr. Bordelon a prescription card to use in obtaining his medications through CVS/Caremark. Id. LCG further notified Dr. Bordelon and IWP that any further bills for prescription medications from IWP would not be authorized. Id. However, Dr. Bordelon continued to order prescriptions through IWP, despite this notice. Id.
Dr. Bordelon filed a disputed claim of compensation seeking his choice of pharmacy. The WCJ granted summary judgment in favor of LCG, “finding that it, |7and not Dr. Bordelon, had choice of pharmacy,” but informed Dr. Bordelon that he could file a motion to change pharmacy in the event that he did not receive his prescriptions within a reasonable timeframe. Id. Subsequently, Dr. Bordelon filed a motion seeking his choice of pharmacy claiming that he experienced such delays, and requesting penalties and attorney’s fees as a result. Id. However, the WCJ denied Dr. Bordelon’s motion, finding that LCG’s *880 choice of pharmacy was reasonable and that there were no deficiencies in the filling of Dr. Bordelon’s prescriptions that would' require a change. Id. The WCJ also limited IWP’s reimbursement for outstanding pharmacy bills to $750 pursuant to La. R.S. 23:1142. Id.
On appeal, the Third Circuit affirmed the judgment of the WCJ. Id. Specifically, the appellate court found no error in the WCJ’s determination that LCG was entitled to choose the pharmacy to be used by Dr. Bordelon, based upon its prior holding in Sigler v. Rand, 04-1138 (La.App. 3 Cir. 12/29/04), 896 So.2d 189, 198, that an employer did not violate its duty under La. R.S. 23:1203(A) by changing its employee’s choice of pharmacy to a different company.
In applying the Sigler finding, the court in Bordelon emphasized that LCG set up a system by which Dr. Bordelon could receive his prescription medications through local pharmacies or by mail, and informed him on how to properly fill his prescriptions in a timely manner. Id. at 423. However, the court found that Dr. Borde-lon simply refused to use that system properly. Id. Accordingly, the court affirmed the WCJ’s finding that LCG was entitled to select the pharmacy to be used by Dr. Bordelon. Id. at 424.
In the Sigler case, the Third Circuit held as follows:
[The employee] takes issue with [his employer’s] reason for its action and asserts that in any event [his employer] was not entitled to cho[o]se the pharmaceutical provider for his medications, citing Louisiana Clinic v. Patin’s Tire Service, 98-1973 (La.App. 3 Cir. 5/5/99), 731 So.2d 525. Patin’s involved the administration of an MRI by a certain healthcare provider, Louisiana Clinic. The employer and workers’ compensation insurer in that case authorized the MRI but refused to authorize Louisiana Clinic to administer the diagnostic test. We explained: ‘We have found no authority that allows the employer or insurer to dictate the place and physician to perform diagnostic testing ordered by a treating physician.” Id. at 528. Because the administration of medical diagnostic testing, the type of equipment used, and the interpretation of the results obtained from the testing involve individual skill levels and perhaps comfort levels for patients, we find that Pa-tin’s does not apply to the circumstances of this case. Unlike in the Patin’s case, the medication [the employee] obtained was the same regardless of which pharmaceutical company provided it.
Thus, we do not find that [the employer] violated its obligation to [the employee] simply because it chose to have his prescriptions filled by a different pharmaceutical company.
Sigler, 896 So.2d at 198. Although the court found that the employer did not violate its duty under La. R.S. 23:1203(A) by choosing the pharmacy to be used by its employee, the court noted that “[i]mplicit within the requirement of La. R.S. 23:1203(A) that the employer ‘furnish all necessary drugs,’ is that those necessary drugs be provided timely.” Id. Accordingly, because the pharmacy service selected by the employer in Sigler failed to timely provide the employee with his prescription medications, the court concluded that the employer had effectively denied the employee his necessary medications in violation of its duty under La. R.S. 23:1203(A). Id. at 198-199.
At trial in the instant ease, Downs introduced an affidavit wherein she provided her reasons for switching from Carlisle to IWP. Specifically, Downs stated that she informed her physician, Dr. Hubbell, of her “dissatisfaction with prior doctors and getting approval for treatment and pre *881 scriptions.” She further stated that after she told Dr. Hubbell that she was experiencing “frustration and depression, and feeling of being overwhelmed,” he asked if it would make things easier on her if her prescriptions were mailed to her home. Downs informed Dr. |flHubbeIl that she would be interested in home delivery, at which point, Dr. Hubbell’s office began sending her prescriptions to IWP. Downs also stated that neither she nor her attorney were notified by Chateau or ERMS that IWP was not authorized to issue her prescriptions until April of 2018.
Chateau introduced the deposition testimony of Dorsey at trial. Dorsey testified that the Carlisle card provided to Downs allowed her to fill prescription medications through retail pharmacies or by mail order. Dorsey testified that Downs successfully used her Carlisle prescription card to fill prescriptions that were paid for by Chateau through ERMS on January 12, 2012, April 4, 2012, May 2, 2012 and July 18, 2012. She further testified that Downs never attempted to use her Carlisle card to receive her prescription medications via mail order.
Based upon our review of the record, we find that the WCJ erred in finding that Chateau was not entitled to select Carlisle as the pharmacy to be used by Downs. In both Bordelon and Sigler, the court held that an employer did not violate its duty under La. R.S. 23:1203(A) by choosing the pharmacy to be used by an injured employee. As emphasized by the court in Sigler, an employer that selects a pharmacy to be used by an employee upholds its duty under La. R.S. 23:1203(A) to furnish all necessary drugs, provided that those drugs are provided to the employee timely. Here, there is no evidence in the record indicating that Chateau’s choice of pharmacy, Carlisle, failed to timely provide Downs with her prescription medications. Rather, the only evidence presented as to Downs’ reason for switching to IWP is that she felt frustrated, depressed and overwhelmed. We find that this evidence is insufficient to establish that Downs failed to receive her prescription medications timely, or that she experienced any other discernable deficiencies in filling her prescriptions through Carlisle.
ImERMS notified Downs that Carlisle was the only authorized provider of prescription medications for her claim, as shown by the December 12, 2011 letter. Downs had the option to use her Carlisle prescription card to receive medications at retail pharmacies or by mail order. She used her Carlisle prescription card to fill prescriptions through pharmacies for several months and failed to present any evidence demonstrating that she experienced any delays or problems in obtaining prescriptions through Carlisle. In fact, Dorsey testified that Downs made no attempt to use the mail order service offered by Carlisle.
Just as in the Bordelon case, the record shows that Downs simply discontinued using the service set up by Chateau and ERMS. Because there is no evidence suggesting that the pharmacy chosen by Chateau, Carlisle, failed to timely provide Downs with her medications, we find that Chateau did not violate its duty under La. R.S. 23:1203(A) by requiring Downs to use the pharmacy of its choice. Accordingly, based upon our review of the record, we find that the WCJ was manifestly erroneous in failing to find that Chateau was entitled to select Carlisle as the pharmacy to be used by Downs. Therefore, we reverse that ruling and render a judgment in favor of Chateau providing that it is entitled to select Carlisle as the authorized pharmacy for Downs’ claim.

*882
Chateau’s Assignment of Error Number Two:

In Chateau’s second assignment of error, Chateau contends that the WCJ erred in failing to find that IWP was precluded from seeking reimbursement for prescription medications issued to Down based upon its failure to comply with La. R.S. 23:1142(B)(l)(a), as alleged in Chateau’s reconventional demand. La. R.S. 23:1142(A)(1) and La. R.S. 23:1142(B)(l)(a) provides as follows:
A. Definitions. — For the purposes of this Section, the following terms shall have the following meanings unless the context clearly indicates otherwise: (1) “Payor” shall mean the entity responsible, Inwhether by law or contract, for the payment of the medical expenses incurred by a claimant as a result of a work related injury.
[[Image here]]
B. Nonemergency care. (l)(a) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemer-gency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer’s workers’ compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
In the Bordelon case, the Third Circuit addressed the applicability of La. R.S. 23:1142(B)(l)(a) to prescription medications. Bordelon, 149 So.3d at 423. The court found that the WCJ did not err in applying La. R.S. 23:1142(B)(l)(a) to limit IWP’s recovery of outstanding pharmacy bills to $750, based on IWP knowingly incurring more than $750 in pharmacy expenses without LCG’s consent and despite LCG’s notice to IWP that any further pharmacy bills would not be paid. Id. at 424. In its ruling, the court cited its prior decision in Rebel Distributors Corp., Inc. v. LUBA Workers’ Comp., 12-909 (La.App. 3 Cir. 4/2/14), 137 So.3d 91, 97, which held that “[although La. R.S. 23:1142(B)(1) does not specifically include prescription medication in the ‘nonemergency diagnostic testing or treatment’ which is subject to the $750.00 cap, we find no error in the WCJ’s application of La. R.S. 23:1142 to [Plaintiffs’] claim against [the Defendant].” Id. at 424.
In response to Dr. Bordelon’s claim that LCG effectively denied his claim for necessary drugs once it informed IWP that it was not authorized to issue his prescription medications, the court disagreed and held that LCG never denied Dr. Borde-lon’s claim for prescriptions. Rather, the court emphasized that LCG set up a system by which Dr. Bordelon could receive his , prescriptions through local | ^pharmacies or by mail, but Dr. Bordelon simply refused to use that system properly. Id.
In the instant case, our review of the record shows that Chateau through ERMS repeatedly notified IWP in writing that it was not authorized to issue prescriptions to Downs, that Carlisle was the authorized pharmacy agent for Downs, and requested that IWP cease from processing any further prescriptions for Downs. However, the record shows that IWP continued to issue prescriptions to Downs, despite this notice, and continued to send ERMS pre-authorization requests for Downs’ prescriptions at least one day after those prescriptions had already been filled by IWP.
*883 Based upon La. R.S. 23:1142(B)(l)(a), we find that the record establishes that IWP knowingly incurred more than $750 in expenses without the consent of the payor, Chateau/E RMS. Accordingly, we find that the WCJ was manifestly erroneous in awarding IWP reimbursement for prescription expenses that exceeded $750. Therefore, we reverse that ruling and render a judgment in favor of IWP against Chateau in the amount of $750 pursuant to La. R.S. 23:1142(B)(l)(a).

Penalties and Attorney’s Fees:

 For the same reasons, we find that the trial court erred in assessing penalties and attorney’s fees against Chateau. La. R.S. 23:1201(F) provides for the assessment of a penalty and reasonable attorney fees against the employer or insurer for the failure to timely commence or timely continue paying benefits unless the claim is reasonably controverted or if the nonpayment results from conditions over which the employer or insurer had no control. Lee v. Heritage Manor of Bossier City, 41,828 (La.App. 2 Cir. 3/14/07), 954 So.2d 276, 283-84, writ denied, 07-0736 (La.5/18/07), 957 So.2d 157. An employee’s right to receive compensation benefits will be deemed reasonably controverted if the employer or |iainsurer had a reasonable basis for believing that compensation was not due. Wilson v. Metropolitan Center, 12-487 (La.App. 5 Cir. 3/13/13), 113 So.3d 261, 268.
Because we have found that Chateau was entitled to select Carlisle as the pharmacy to be used by Downs, we find that Chateau reasonably controverted IWP’s claims for payment of prescription medications issued to Downs. Therefore, we find the WCJ erred in assessing penalties and attorney’s fees against Chateau. Chateau introduced evidence of multiple written notices to IWP, advising IWP that it was not authorized to issue prescriptions to Downs, that Carlisle was the authorized pharmacy agent for Downs, and requesting that IWP cease from processing any further prescriptions for Downs. Despite these notices, IWP continued to issue prescription medications to Downs, and then request pre-authorization from ERMS at least one day after it had already filled Downs’ prescriptions.
Furthermore, our review of the record shows that Chateau provided Downs with a Carlisle prescription card, which allowed her to obtain prescriptions through either retail pharmacies or by mail order. Downs obtained prescriptions through this system for several months until she switched to IWP, without notice to Chateau or ERMS. At trial, Downs cited feelings of frustration, depression and being overwhelmed as her reason for switching to IWP. Based upon the foregoing, we cannot say that Chateau denied Downs’ claim for necessary medications in violation of La. R.S. 23:1203(A), or that it did not have a reasonable basis in believing that compensation was not due to IWP. Accordingly, we reverse the WCJ’s award of $5,000 in penalties and $5,000 in attorney’s fees against Chateau.
Because we have reversed the WCJ’s award of reimbursement expenses to IWP in excess of $750, and its assessment of penalties and attorney’s fees against Chateau, Chateau’s remaining assignments of error are now moot.
luCONCLUSION
For the reasons stated herein, we reverse the WCJ’s June 2, 2014 judgment in favor of Downs and IWP, which awarded IWP reimbursement of prescription expenses in excess of $750 and assessed an award of $5,000 in penalties and $5,000 in attorney’s fees against Chateau. We hereby render a judgment in favor of Chateau providing that it is entitled to select Car- *884 lisie as the pharmacy to be used by Downs, and a; judgment in favor of IWP in the amount of $750 against Chateau pursuant to La. R.S. 23:1142(B)(l)(a). Each party shall bear its own costs on appeal.

REVERSED AND RENDERED