ROSEMARY LEDET, Judge.
1 -(Tills is a workers’ compensation case. The sole .issue presented on this appeal is the legal, issue of whether the choice of pharmacy belongs to the employee. Answering that question 'in the affirmative, we affirm the trial court’s judgment ordering the employer to reimburse the employee for prescription medications obtained from the pharmacy selected by the employee.
FACTUAL AND PROCEDURAL BACKGROUND[1]
On October 13, 2008, Darvel Burgess, an employee of the Sewerage and Water Board of New Orleans (the “S & WB”), sustained neck and back injuries while working as a maintenance technician. He was injured when he fell from the bed of a pick-up truck onto the street. From the date of the injury, the S <⅞ WB paid Mr. Burgess workers’ compensation indemnity benefits — TTD or SEB payments — and certain medical benefits.'
On October 10, 2011, the S & WB sent Mr. Burgess a letter, which was addressed to “All Injured Workers,” that stated:
| ¡>[The] Sewerage and Water board has partnered with Corvel Caremark Pharmacy Program for all Injured Employees. This Pharmacy card will replace any pharmacy program that you may be currently using. It is your responsibility to purchase all medications related to your injury with the attached pharmacy card.- :
Failure- to adhere to this practice may result in non-payment of your Worker’s Compepsation medication.
. On October 18,2011, Mr. Burgess signed a copy of the letter acknowledging he would adhere to the S & WB’s pharmacy program.
On April 12, 2012, the S & WB sent a letter to Injured Workers Pharmacy (“IWP”) — Mr. Burgess’ choice of pharmacy.[2] The letter stated that IWP “is not an approved pharmacy provider” for the S & WB’s prescription claims, that IWP should not accept prescriptions from the S & WB’s injured workers, and that any prescription bills submitted by IWP for payment would be denied. On August 22, 2012, the S & WB sent a second letter to IWP, which stated that the S & WB was no longer paying bills submitted from IWP because it had a pharmacy program for its injured workers and that IWP’s request for payment for Mr. Burgess’ prescription medications was denied.
On September 21, 2012, Mr. Burgess filed a disputed claim for compensation against the S & WB alleging a dispute as to both his disability status — TTD or SEB — and certain unpaid medical bills — ■ medical expenses due to Advanced Neuro-diagnostic Center and prescription expenses due to IWP. ' Mr. Burgess also requested an award of attorney’s fees and penalties for S & WB’s failure to timely pay the medical'bills. S & WB subsequently answered the disputed |..¡claim, *51 Thereafter, the matter was stayed twice at Mr. Burgess’ request, with no objection from the S & WB.
On April 21, 2015, the- trial court ordered the parties to submit trial briefs on two issues: (i) unpaid prescription bills from IWP, and (ii) unpaid medical bills from Advanced Neurodiagnostic Center. After the briefs were received, the matter was submitted to the trial court on the trial briefs and the attached exhibits.[3] On June 18, 2015, the trial court rendered a final judgment in Mr. Burgess’ favor; the trial court ruled as follows:
• The Employer shall pay the outstanding balance for medications supplied' by Injured Workers’ Pharmacy (“IWP”) in ■ the amount of $13,110.82. ■ >
Defendant shall pay any and all outstanding medical expenses owed to Advanced Neurodiagnostic Center via the fee schedule.
The Employer shall pay a $2,000.00 penalty and a $2,000.00 attorney fee due to its failure to timely pay medication and medical expenses in this matter. From this’judgment, the S & WB-appeals.
STANDARD OF REVIEW'
Summarizing the applicable standard of review in workers’ compensation cases, -this court in Augusta v. Audubon Zoo, 15-0300, p. 3 (La.App. 4 Cir. 9/23/15), 176 So.3d 616, 617-18, stated:
In workers’ compensation cases, 'the appropriate standard of review 'to be applied by the appellate court to the OWC’s findings of fact is the manifest error-clearly wrong standard. Dean v. Southmark Constr., 2003-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. ' When legal error interdicts the fact-finding process in a workers’ compensation proceeding, the de novo, rather than the manifest error, standard of | ¿review applies. MacFarlane v. Schneider Nat’l Bulk Carriers, Inc., 2007-1386, p. 3 (La. App. 4 Cir. 4/30/08), 984 So.2d 185, 188. Likewise, interpretation of statutes pertaining to workers’ compensation, is a question of law and warrants a de novo review to determine if the ruling was •legally correct. Id.
Id.-As noted at the outset, this appeal presents a-legal-issue to which a de novo standard of review applies.
DISCUSSION
An -employer’s obligation to furnish medical expenses is governed by La.’ R.S. 23:1203 A, which provides that “the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any non-medical treatment- recognized by the laws of this state as legal.” The employer’s obligation under this section, however, is limited by La. R.S. 23:1203 B, which provides:-
' The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is -limited to the reimbursement determined to be the mean of the usual and- customary charges for such care, services, treatment, drugs, - and supplies, -as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual ■ charge made for the service, whichever • is less.
Under La. R.S. 23:1203 A, the employer is obligated to provide the employee with all necessary prescription medication.
*52 This appeal presents the purely legal question of whether the choice of pharmacy at which to procure necessary prescription medications belongs to the employee. It is purely a legal question because the S & WB does not dispute that Mr. Burgess’ prescription medications were reasonably necessary or that the cost of his pres'cription medications was within the reimbursement schedule of fees; rather, the S & "WB disputes only the pharmacy at which the prescription | ¿medications were to be obtained. See Davis Plumbing Co., Inc. v. Burns, 967 So.2d 94, 97 (Ala.Civ.App.2007).
The same legal question, albeit under the Alabama Worker’s Compensation Law, was addressed in Davis, supra. In that case, as here, the employer, Davis Plumbing did not dispute that the employee’s prescription medications were reasonably necessary or that the cost of his prescription medications was within the prevailing rate or maximum schedule of fees; rather, the employer disputed only the pharmacy at which the prescription medications were to be obtained. The Alabama Workers’ Compensation Law, like the Louisiana Workers’ Compensation Law, was silent on the issue of who has the authority in a workers’ compensation case to select the pharmacy to be used by the employee.
In Davis, the court construed a statute similar to La. R.S. 23:1203, which provided that “the employer ... shall pay an amount not to exceed the prevailing rate or maximum schedule of fees as established herein of reasonably necessary ... medicine ... as may be obtained by the injured employee.” Section 25-5-77(a) (Ala.Code 1975). Based on that statute, the court concluded that the choice of pharmacy belongs to the employee; the court reasoned as follows:
Although the Act grants the employer a measure of control over the workers’ compensation process, the Act does not grant the employer the authority to select which pharmacy an employee receiving workers’ compensation benefits must use.... The Act establishes the employer’s obligation to pay for the employee’s medicine prescribed by an authorized physician pursuant to the conditions stated in § 25-5-77(a). However, the Act contains no provision excusing the employer from its obligation pursuant to § 25-5-77(a) to pay for the employee’s prescription medicine merely because the employee uses a pharmacy that, was not selected by the employer.
Davis, 967 So.2d at 97-98. The court further noted that “[i]f the legislature had intended for an employer to have authority to select the pharmacy to be used by an j^injured employee, the legislature could have granted that authority in the Act.” Id. at 99. The court concluded that the employee had the right to use the pharmacy of his choice and that the employer had the obligation to pay for the employee’s pharmacy expenses.
Although the Louisiana Workers’ Compensation Act contains no provision expressly excusing an employer from paying for an employee’s prescription medication simply because the employee uses a pharmacy other than the one selected by the employer, the S & WB’s position is that La. R.S. 23:1142 B[4] operates to relieve it *53 of that obligation to pay for such prescription medication.[5] In support of its, position, the S & WB cites Rebel Distributors Corp., Inc. v. LUBA Workers’ Comp., 12-909 (La.App.3 Cir. 4/2/14), 137 So.3d 91; and Bordelon v. Lafayette Consol. Gov’t, 14-304 (La.App. 3 Cir. 10/1/14), 149 So.3d 421, writ denied, 14-2296 (La.2/6/15), 158 So.3d 816.
Simply put, the S & WB contends that La. R.S. 23:1142 B excuses it from paying for its employee’s prescription medication because the employee used a |7pharmacy that it did not approve. S & WB’s position is that, under La. R.S. 23:1021(6), a “health care provider” is defined as including a pharmacist and that under La. R.S. 23:1142 B, “non-emergency diagnostic testing and treatment,” includes prescription medication.
The S & WB thus contends that the trial-court erred in failing to find that IWP — a health care provider — was required, to obtain the S & WB’s approval to provide non-emergency services — prescription medication — to Mr. Burgess. The S & WB submits that the trial court erred in ordering it to pay the outstanding balance of the IWP bill, totaling $13,110.82. It contends that the judgment should be reversed or amended to limit its obligation to the statutory cap under La. R.S. 23:114 B of $750.00. Implicit in the S & WB’s position is a contention that the choice of pharmacy belongs to the employer.
Mr'. Burgess counters that the trial court applied the correct legal standard— La. R.S. 23:1203 A[6] — when it awarded payment of the outstanding IWP bill of $13,110.82 for prescription medication. He points out that each of the medications that IWP provided was prescribed by a physician who treated him for his work-related injuries. He thus contends that ■ the S & WB was required to pay the IWP bill as these medications were reasonable and necessary according to his treating Isphysicians. Implicit in Mr. Burgess’ position is a contention that the choice of pharmacy belongs to the employee.
The legal issue presented here of whether the choice of pharmacy belongs to the employee has been addressed by three other circuits; there is an apparent split among the circuits on the issue. The Second Circuit has held that the choice of pharmacy belongs to the employee. Naron v. LIGA 49,996, pp. 5-6 (La.App. 2 Cir. 9/9/15), 175 So.3d 475, 477-78. The Third and Fifth Circuits have held that the choice of pharmacy belongs to the employer. Bordelon, supra; Downs v. Chateau *54 Living Ctr., 14-672 (La.App. 5 Cir. 1/28/15), 167 So.3d 875; see also Lafayette Bone & Joint Clinic v. Guy Hopkins Const. Co., Inc., 15-284, p. 7 (La.App. 3 Cir. 10/21/15), 177 So.3d 142, 147 (noting that Sigler v. Rand, 04-1138 (La.App. 3 Cir. 12/29/04), 896 So.2d 189, and Bordelon “allow a payor to direct an injured worker as to where to obtain medication,” but finding those cases factually inapposite). Although the Louisiana Supreme Court has not addressed the issue, one justice would have granted the writ application filed in the Bordelon case. Bordelon, supra (HUGHES, J., noting that he “would grant [the writ] as per J. SAUNDER’s dissent.”)
This is the first time this court addresses the issue. In resolving the issue, we find it instructive to consider the jurisprudence addressing the related issue of choice of physician before the Louisiana Legislature enacted La. R.S. 23:1121, which gives the employee the right to select a physician.[7] Kinsey v. Travelers Ins. Co., Inc., 402 So.2d 226 (La.App. 1st Cir. 1981), is illustrative of that early jurisprudence.
|nIn Kinsey, the First Circuit construed the statute which provided that “the employer shall furnish all necessary medical, surgical and hospital services.” La. R.S. 23:1203. The Louisiana Workers’ Compensation Act at that time, however, was silent on the issue of who had the right to choose the. physician. Kinsey, 402 So.2d at 227. The First Circuit concluded that the .choice of physician belonged to the employee because “[t]he trust and confidence needed in a patient-doctor relationship is important to successful treatment which can be best obtained if the injured employee has the choice of physician for treatment purposes.” Kinsey, 402 So.2d at 228.
This same rationale — the patient’s trust and confidence — has been noted to apply in the context of determining whether the choice of pharmacy belongs to the employee. In Sigler, the Third Circuit distinguished its prior decision in Louisiana Clinic v. Patin’s Tire Service, 98-1973 (La. App. 3 Cir. 5/5/99), 731 So.2d 525, on the basis that the above rationale did not apply to a pharmacist; whereas^ the rationale did apply to the provider of an MRI, which was the issue in Patin’s.[8] In making that distinction, the Third Circuit in Sigler reasoned as follows:
Sigler takes issue with Dresser Rand’s reason for its action and asserts that in any event Dresser Rand was not entitled to chose the pharmaceutical pro- ' vider for his medications, citing Louisiana Clinic v. Patin’s Tire Service, 98-1973 (La.App. 3 Cir. 5/5/99), 731 So.2d 525. Patin’s involved the administration of an MRI by a certain |inhealthcare provider, Louisiana Clinic. The employer and workers’ compensation insurer in that case authorized the MRI but refused to authorize Louisiana Clinic to ■ administer the diagnostic test. We ex *55 plained: “We have found no authority . that allows the employer or insurer to dictate the place and physician to perform diagnostic testing ordered -by a treating physician.” Id. at 528. Because the administration of medical diagnostic testing, the type of equipment used, and the interpretation of the results obtained from the testing involve individual skill levels and perhaps comfort levels for patients, we find that Pa-tin’s does not apply to the circumstances of this case. Unlike in the Palin’s case, the medication Sigler obtained was the same regardless of which pharmaceutical company provided it.
Sigler, 04-1138 at pp. 14-15, 896 So.2d at 198. The Third Circuit in Sigler -thus held that an employer did not violate its obligation to its employee “simply because it [the employer] chose to have his [the employee’s] prescriptions filled by a different pharmaceutical company.” Sigler, 04-1138 at p. 15, 896 So.2d at 198.
Voicing his disagreement with the, distinction made in Sigler, Judge Saunders, in his dissent in Bordelon, reasoned as follows:
This court, in Sigler ... concluded that an employee was entitled to choose the provider of diagnostic testing services “[b]ecause the administration of medical diagnostic testing, the type of equipment used, and the interpretation of the results obtained from the testing involve individual skill levels and perhaps comfort levels for patients.” This court further opined that an employee was not entitled to choose his own pharmaceutical provider because “the medication [the employee] obtained was the same regardless of which pharmaceutical company provided it,” Id. at 198, clearly suggesting that pharmaceutical providers provide merely ministerial services, rather than services that involve any level of skill. These conclusions were mere dicta in the case and, I submit, incorrect. For the reasons articulated below, I think that Sigler was wrongly decided,-1 think that this case was wrongly decided. While the majority finds itself bound by the holding of Sigler, I would overrule Sigler.
It is simply common knowledge that pharmacists provide more than, merely ministerial services. , Pharmacists are responsible for, among many other duties, accurately dispensing prescribed medications in the. proper dosage to the proper patient, for advising the patient of any potential drug interactions, of any potential side effects, and of any recommendations concerning how and when to take medication, for communicating with preservers when a prescription order is unclear or potentially harmful for the patient, for h promoting general health by sharing advice concerning nonprescription remedies and supplements, such as vitamins, over-the-counter medications, and herbal remedies, and staying abreast of new medications and drug therapy protocol. Often, patients share confidential and personally sensitive information with their pharmacists. These tasks are much more than merely ministerial. They are an important part of a patient’s treatment and require advanced knowledge, a high-level of individual skill, and the comfort of the patient.
Bordelon, 14-304 at pp. 3-4, 149 So.3d at 426 (Saunders, J., dissenting).
Judge- Saunders further-noted in his dissent that the “reasonableness” of the employer’s choice of pharmacy is the not the issue; rather, the issue is “whether an injured employee in Louisiana may choose his healthcare provider, including a pharmacist.” Bordelon, 14-304 at p. 1, 149 *56 So.3d at 425 (Saunders, J., dissenting).[9] Continuing, he noted that the jurisprudence has refused to restrict an injured employee’s choice of healthcare providers, except where the choice is specifically given to the employer. Id. (quoting Patin’s, 98-1973 at p. 5, 731 So.2d at 528, which held that “[w]e have found no authority that allows the employer or insurer to dictate the place and physician to perform diagnostic testing ordered by a treating physician.”). Judge Saunders still further noted that “[djovetailing with this analysis is the second circuit’s interpretation of La. R.S. 23:1203 in Brown v. KTBS, Inc., 42,847 (La.App. 2 Cir. 1/9/08), 974 So.2d 784, ... that Louisiana was a ‘patient choice’ state.” Id.[10]
The Second Circuit in Naron, citing its prior decision in the Brown case, held that the choice of pharmacy belonged to the employee for the following reasons:
In Brown ... the parties disputed whether the workers’ compensation claimant could obtain a medically necessary wheelchair from her local vendor of choice, or whether it needed to be obtained from an out-of-town vendor of the employers choosing. This court recognized that while La. R.S. 23:1203 did not address which party had the right to choose the vendor for a reasonable and necessary medical device, it obligated the employer to reimburse a claimant of the lesser of the amount shown in the fee schedule or the actual cost of a recommended medical device. Therefore, this court reasoned that under the circumstances of the case, the claimant had the right to choose the providers of necessary drugs, supplies, and services.
Naron, 49,996 at pp. 5-6, 175 So.3d at 477-78. Although the issue in Brown was the choice of the right to select the vendor of a wheelchair, “the court made a broad statement regarding the employee’s right to select the vendors of necessary drugs, supplies, services, etc.” 1 Denis Paul Juge, *57 LOUISIANA WORKERS’ COMPENSATION, § 13:3, n. 121 (2d ed. 2013).
| i.Jn so holding, the Second Circuit in Naron expressly noted “two cases’ involving IWP' from other circuits where the courts of appeal held that the choice of pharmacy belonged to the employer.” Naron, 49,996 at p. 6, n. 3, 176 So.3d at 478 (citing Bordelon, supra, and ti'own's, supra). The contrary holdings in Borde-lon and Dovms were both based ’ on- the distinction between Sigler and Batin’s, discussed above. In Bordelon, the court found no error in the trial court’s determination, under Sigler, that the employer was entitled to choose the pharmacy to be used by the employee. In Downs, the court reasoned as follows: ■ -
In both Bordelon and Sigler, the court held that an employer did not violate its duty under La. R.S. 23:1203(A) by choosing the pharmacy to be used by an injured employee. As emphasized by the court in Sigler, an employér that selects a pharmacy to be used by an employee upholds its duty under La. R.S. 23:1203(A) to furnish all necessaiy drugs, provided that those drugs are provided to the employee timely.
Downs, 14-672 at p. 9, 167 So.3d at 881.
But, Louisiana is “overwhelmingly a ‘patient choice’ state.” Bordelon, 14-304 at p. 4, 149 So.3d at 426 (Saunders, J., dissenting); see 1 Denis Paul Juge, LOUISIANA WORKERS’ COMPENSATION, § 13:3 (2d ed. 2013) (noting that, unlike Louisiana, “[t]wenty-three states provide for employer choice of treating physician and three states limit the employee’s choice to a list provided by the state agency.”). The Louisiana Workers’ Compensation Act contains no provision granting the employer the right to select the pharmacy that the employee must use. The Act, however, obligates the employer to pay for the employee’s reasonably necessary prescription medication. The Act contains no exception for situations in which the employer objects to the pharmacy the employee selects. See Davis, supra. We thus find that the choice of pharmacy belongs to the employee.
|uAs noted, the S &WB makes only a legal argument, citing Bordelon and Rebel, that La. R.S. 23:1142 B should apply to excuse it from paying the entire IWP bill or to limit the bill to the statutory cap of $750.00. As concluded above, we disagree with the holding in Bordelon that the choice of pharmacy belongs to the employer. We likewise disagree with the holding in Rebel,[11] relied upon in Bordelon, that La. R.S. 23:1142 B applies in this context for several reasons.
First, as Chief Judge Thibodeaux noted in his partial dissent in the Rebel case:
Louisiana Revised Statutes 23:1142(B)(1) and (B)(2)(a) repeatedly refer to “diagnostic testing” and “treatment.” It does not,' as the majority opinion concedes, include prescription medication as part of nonemergency diagnostic testing or treatment. The diagnostic testing and treatment are the only matters that are subject to the $750.00 cap, not medication.
The more specific provisions of Part II of Chapter 10 entitled “Benefits” should properly apply. Louisiana Re *58 vised Statutes 23:1203(A)(B)(D) and (E) all specifically refer to “drugs,” “supplies,” or “services.”
Rebel, 12-909 at p. 1, 137 So.3d at 101 (Thibodeaux, Chief Judge, dissenting in part).[12] We agree.
Second, the S <& WB’s reliance on La. R.S. 23:1142 is not .because of its non-approval of the prescription medication; rather, it is because of its objection to the choice of pharmacy that Mr. Burgess ser lected to fill that | ^medication. Because we find the choice of pharmacy belongs to the employee, we find the S & WB’s reliance on La. R.S. 23:1142 in an attempt to obtain the benefit of the choice of pharmacy is misplaced.
Finally, the purpose of La. R.S. 23:1142 is to allow the employer to contest unnecessary, or unreasonable medical care. The purpose is not to allow the employer to “bargain shop.” Patin’s, 98-1973 at p. 5, 731 So.2d at 528 (noting that “La.R.S. 23:1034.2 and 23:1142(B) ... place a monetary limit on the diagnostic testing. Concomitantly, these statutes give no indication that an employer may ‘bargain shop’ for the least expensive facility in which to have the testing performed.”).
Accordingly, we find no error in the trial court’s implicit finding that La. R.S.23:1203 applies, not La. R.S.23:1142.

DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
LOBRANO, J., dissents with reasons.

. Because this matter was submitted for trial on briefs on two narrow issues, the record in this case contains very little factual detail. The statement of the facts is taken from the S & WB's appellant brief and the exhibits attached to the parties’ trial briefs.

. The exhibits attached to the briefs include a copy of a worksheet summarizing IWP’s outstanding bill. The worksheet reflected that IWP’s outstanding bill was for prescriptions filled for Mr. Burgess from September I, 2010 to December 7, 2012,

. According to the S & WB, when the matter . was set for-trial the parties were negotiating a possible compromise of the disability - issue. ■As a result,.the matter was submitted to the trial .court solely on the issue of the unpaid . medical bills.

. La. R.S. 23:1142 B provides, in part, as follows:
Nonemergency care. (l)(a) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemer-gency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer’s *53 workers’ compensation insurer unless the employee and the -payor have agreed upon the diagnostic testing or treatment by the health care provider.

. The S & WB asserts the following two assignments of error:
1. The trial court erred, as a matter of law, in not applying La. R.S. 23:1142 B, which requires the health care provider to obtain the payor’s consent for non-emergency care and limits the payor’s expense to $750.00.
2. The trial court erred in not finding that the S & WB had advised both the health care provider, IWP, and the claimant, Mr. Burgess, that IWP was not an approved pharmacy provider and that accordingly the IWP bill would be denied.

. La. R.S. 23:1203 A provides:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities . as will provide the injured employee with such necessary services. Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs.

. La. R.S. 23:1121 B(l) provides that ‘‘[t]he employee shall have the right to select one treating physician in any field or specialty."

. The Patin’s case presented a dispute over a MRI bill; the employer wanted its choice of diagnostic facility for an MRI scan. Rejecting that argument, the Third Circuit reasoned as follows:
We have found no authority that allows the employer or insurer to dictate the place and physician to perform diagnostic testing ordered by a treating physician.' Rather, the check on the employee’s testing is through La.R.S. 23:1034.2 and 23:1142(B), which place a monetary limit on the diagnostic testing. Concomitantly, these statutes give no indication that an employer may "bargain shop”, for the least expensive facility in which to have the testing performed.
Patin’s, 98-1973 atp. 5, 731 So.2d at 528.

. Judge Saunders also noted that La. R,S. 22:1964(15)(a) generally provides that issuance of any health benefits policy which "prohibits or limits a person who is an insured or beneficiary of the policy ... from selecting a pharmacy or pharmacist of the person's choice ... or in any manner interferes with that person’s selection of a pharmacy of pharmacist” is an unfair or deceptive practice. Bordelon, 14-304 at p. 1, 149 So.3d at 425 (Saunders, J„ dissenting). He points out that “[w]hile this statute does not directly apply to worker’s compensation policies, reading this law in conjunction with the laws concerning worker's compensation, as a policy of insurance, it generally implies a legislative intent to preserve an insurance benefits recipient’s right to his choice of pharmacy and pharmacist.” Bordelon, 14-304 at pp. 1-2, 149 So.3d at 425 (Saunders, J., dissenting). Judge Saunders also notes that the Attorney General, in opinion No. 89-47, agreed that the employer could not compel an injured employee to use the pharmacy of its choice.

. The reasoning in Brown on this issue was as follows:
La. R,S.23:1203 does not address the issue of which party has the right to choose a vendor for a reasonable and necessary medical device ... [but] does set forth the obligation of an employer to a claimant, which is simply that of reimbursement of the lesser of the amount provided by the fee schedule or the actual amount paid for a recommended medical device.
[[Image here]]
What is contemplated by the legislature is that a claimant will incur expenses for necessary drugs, supplies, care, services, or, as in this case, a medical device, then obtain reimbursement from his or her employer. Under the circumstances of this case, claimant clearly has the right to choose the providers of the necessary drugs, supplies, services, etc., and defendants are protected by: (1) the requirement that said drugs, supplies, services, etc., be necessary and (2) the cost limit established La. R.S. 23; 1203(B).
Brown, 42,847 at pp. 3-4, 974 So.2d at 786.

. In Rebel, the Third Circuit refused to address the issue of whether the trial court erred in not granting the employee her choice of pharmacy because the employee was not a party. The court reasoned that "[t]he only parties having a right of action to raise this issue are the employee, Ms. Doucet, and, possibly, the employer/insurer.” Rebel, 12-909 at pp. 5-6, 137 So.3d at 95.

. Chief Judge Thibodeaux'voiced an identical dissent in each of the sixteen Rebel cases involving this issue that were decided by the Third Circuit. These sixteen Rebel cases, and his dissents in each of those cases, are published at 137 So.3d at 91-101.