**Darvel BURGESS**

v.

**SEWERAGE & WATER BOARD OF NEW ORLEANS**

**NO. 2015–CA–0918**

Court of Appeal of Louisiana,
Fourth Circuit.

NOVEMBER 23, 2016

emoluments of public officials, freight,

passage, money, lodging, and board . . .

J. Jacob Goehring, 2901 N. Causeway Blvd., Suite 204, Metairie, LA 70002, COUNSEL FOR PLAINTIFF/APPEL-LEE

Anthony J. Stewart, Harold D. Marchand, Nolan P. Lambert, SEWERAGE AND WATER BOARD OF NEW OR-LEANS, 625 St. Joseph Street, Room 201, New Orleans, LA 70165, COUNSEL FOR DEFENDANT/APPELLANT

(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins)

Judge Rosemary Ledet

This matter is before us on remand from the Louisiana Supreme Court for reconsideration of our earlier decision in *Burgess v. Sewerage & Water Bd. of New Orleans*, 15–0918 (La.App. 4 Cir. 2/3/16), 187 So.3d 49, *writ granted and remanded*, 16–0416 (La. 9/16/16), —— So.3d ——, 2016 WL 5462489 ("*Burgess I*"). In its remand order, the Louisiana Supreme Court instructed that we order additional briefing and reconsider this matter in light of *Lafayette Bone & Joint Clinic v. Louisiana United Bus. SIF*, 15–2137, 15–2138 (La. 6/29/16), 194 So.3d 1112. After ordering the

parties to re-brief the matter and reconsidering the matter, we reaffirm our original decision.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2008, Darvel Burgess sustained a work-related injury. From the date of his injury, his employer, the Sewerage and Water Board of New Orleans (the "S & WB"), paid indemnity and certain medical benefits. In September 2012, Mr. Burgess filed a disputed claim for compensation against the S & WB with the Louisiana Office of Workers' Compensation ("OWC"). The disputed claim included, among other things, a claim for payment of unpaid prescription bills due to Injured Workers Pharmacy ("IWP"), Mr. Burgess' choice of pharmacy.[1] Mr. Burgess also requested an award of attorney's fees and penalties for S & WB's failure to timely pay, among other things, the IWP Bill.

This matter was submitted to the OWC Judge on briefs. In support of his claim, Mr. Burgess attached to his brief the IWP Bill reflecting an outstanding balance of $13,110.82. In opposition, the S & WB attached to its brief two letters. The first letter, dated October 10, 2011, was sent by the S & WB to "All Injured Workers" and advised that the S & WB's approved pharmacy provider was Corvel Caremark Pharmacy Program.[2] The second letter, dated

1. The exhibits attached to the briefs include a copy of a worksheet summarizing IWP's outstanding bill. The worksheet reflected that IWP's outstanding bill was for prescriptions filled for Mr. Burgess from September 1, 2010 to December 7, 2012, which totaled $13,110.02 (the "IWP Bill").

2. The letter read as follows:
[The] Sewerage and Water board has partnered with Corvel Caremark Pharmacy Program for all Injured Employees. This Pharmacy card will replace any pharmacy program that you may be currently using. It is your responsibility to purchase all medications related to your injury with the attached pharmacy card.
Failure to adhere to this practice may result in non-payment of your Worker's Compensation medication.
On October 18, 2011, Mr. Burgess signed a copy of the letter acknowledging that he would adhere to the S & WB's new pharmacy program.

April 12, 2012, was sent by the S & WB to IWP; in this letter, S & WB advised IWP of the following: (i) that IWP "is *not* an approved pharmacy provider" for the S & WB's prescription claims, (ii) that IWP should not accept prescriptions from the S & WB's injured workers, and (iii) that any prescription bills submitted by IWP for payment would be denied.

Before the OWC Judge, the S & WB advanced only the legal argument that La. R.S. 23:1142 B, which provides a $750 cap on "nonemergency medical care," applied and that the outstanding IWP Bill was not enforceable against it. On June 18, 2015, the OWC Judge rendered judgment in Mr. Burgess' favor implicitly finding that La. R.S.23:1203 A, which obligates an employer to provide the employee with all necessary prescription medication, not La. R.S.23:1142 B applied and ordering the S & WB to pay the IWP Bill.[3]

In *Burgess I*, this court noted that this case presents "the purely legal question of whether the choice of pharmacy at which to procure necessary prescription medications belongs to the employee." 15–0918 atp. 4, 187 So.3d at 52.[4] Before this court, the S & WB advanced the same legal argument as it did before the OWC—that La. R.S. 23:1142 B applied. *Burgess I*, 15–0918 at pp. 6–8, 187 So.3d at 53. Mr. Burgess countered that the OWC Judge applied the correct legal standard—La. R.S. 23:1203 A. *Id.* As we noted in *Burgess I*, implicit in Mr. Burgess' position is that the choice of pharmacy belongs to the employee; and implicit in the S & WB's position is that the choice of pharmacy belongs to the employer. *Id.*

Affirming the OWC Judge's decision, this court in *Burgess I* held that La. R.S.23:1203 A, not La. R.S.23:1142 B, applied and that the choice of pharmacy belonged to the employee. From our decision, the S & WB filed an application for supervisory writ with the Louisiana Supreme Court. As noted at the outset, the Supreme Court granted the S & WB's writ and remanded the matter to this court with instructions. This case is thus now before us on remand.

## DISCUSSION

On remand, the Louisiana Supreme Court instructed this court to reconsider its prior decision in this matter in light of *Lafayette Bone & Joint Clinic*. In so doing, we find this matter factually distinguishable from *Lafayette Bone & Joint Clinic* in two significant respects.

First, the plaintiffs in *Lafayette Bone & Joint Clinic* were the treating physicians and the Lafayette Bone & Joint Clinic ("LB & J"), which was the clinic at which the treating physicians practiced. The LB & J doctors, as part of their treatment of the injured employees, directly dispensed prescription medications during office visits. Given the health care providers were the plaintiffs coupled with the lack of testimony on the choice of pharmacy issue, the Louisiana Supreme Court held that the

**3.** The judgment also included an order that the S & WB pay another outstanding medical bill owed to Advanced Neurodiagnostic Center and an award of a $2,000 penalty and a $2,000 attorney's fee award. On appeal, the S & WB did not assign as error the penalty and attorney's fee award or the award for the medical bill. These awards are thus not properly before us.

**4.** We further explained that "[i]t is purely a legal question because the S & WB does not dispute that Mr. Burgess' prescription medications were reasonably necessary or that the cost of his prescription medications was within the reimbursement schedule of fees; rather, the S & WB disputes only the pharmacy at which the prescription medications were to be obtained." *Burgess I*, 15–0918, at pp. 4–5, 187 So.3d at 52.

evidence presented did not raise a "tenable employee choice issue." *Lafayette Bone & Joint Clinic,* 15–2137, 15–2138 at p. 5, 194 So.3d at 1117. Although this case was submitted to the OWC Judge on briefs and no testimony was taken, the plaintiff here is the injured employee—Mr. Burgess—who, by definition, has the right of action to assert the choice of pharmacy claim. *See Rebel Distributors Corp., Inc. v. LUBA Workers' Comp.,* 12–909, p. 5 (La.App. 3 Cir. 4/2/14), 137 So.3d 91, 95 (noting that "[t]he only parties having a right of action to raise this [choice of pharmacy] issue are the employee, Ms. Doucet, and, possibly, the employer/insurer."). Testimony thus was unnecessary here to establish Mr. Burgess' right of action to assert the choice of pharmacy issue.

Second, *Lafayette Bone & Joint Clinic* involved physician-dispensed medications, which is a factual situation within the scope of La. R.S. 23:1142 B. |₆Indeed, the Supreme Court noted that *Lafayette Bone & Joint Clinic* hinged on the application of that statute's requirement of mutual consent of the employer and employee. There, the medication was provided as part of the injured employees' office visits at LB & J. In that setting, the issue presented under La. R.S. 23:1142 B was whether the consent for the employees to obtain medical treatment from LB & J encompassed dispensing prescription medication during such office visits.

In contrast, this case involves a pharmacist, outside the context of a physician's office, dispensing medication. Here, unlike in *Lafayette Bone & Joint Clinic,* the employee mailed the prescription to the pharmacist to be filled. "The dispensing of medication (as distinguished from prescribing or administering medication) is neither nonemergency diagnostic testing nor nonemergency treatment. Louisiana R.S. 23:1142(B), by its language, does not apply to the dispensing of medication." *Lafayette Bone & Joint Clinic,* 15–2137, 15–2138 at p. 1, 194 So.3d at 1126 (Weimer, J., dissenting) (citing *Rebel Distributors Corp., Inc. v. LUBA Workers' Comp.,* 12–909, p. 1 (La.App. 3 Cir. 4/2/14), 137 So.3d 91, 101 (Thibodeaux, C.J., dissenting in part).[5]

|₇The two distinctions noted above render *Lafayette Bone & Joint Clinic* inapposite. Indeed, as Justice Weimer points out in his dissent in *Lafayette Bone & Joint Clinic,* the majority opinion in that case sidestepped addressing the two pivotal issues that have split the circuits—"[i] whether the employer/payor has the right to determine where the employee can have a prescription filled [patient choice issue] and [ii] whether the dispensing of prescription medication constitutes „nonemergency diagnostic testing or treatment' so as to trigger the provisions of La. R.S. 23:1142." 15–2137, 15–2138 at p. 1, 194

---

**5.** This court in *Burgess I* likewise cited Chief Judge Thibodeaux's partial dissent in *Rebel* for the same principle. As we noted in *Burgess I,* Chief Judge Thibodeaux voiced an identical dissent in each of the sixteen *Rebel* cases involving this issue that were decided by the Third Circuit. These sixteen *Rebel* cases, and his dissents in each of those cases, are published at 137 So.3d 91–118. Chief Judge Thibodeaux's partial dissent in *Rebel* reads as follows:

> Louisiana Revised Statutes 23:1142(B)(1) and (B)(2)(a) repeatedly refer to "diagnostic testing" and "treatment." It does not ... include prescription medication as part of nonemergency diagnostic testing or treatment. The diagnostic testing and treatment are the only matters that are subject to the $750.00 cap, not medication.

> The more specific provisions of Part II of Chapter 10 entitled "Benefits" should properly apply. Louisiana Revised Statutes 23:1203(A)(B)(D) and (E) all specifically refer to "drugs," "supplies," or "services." *Rebel,* 12–909 at p. 1, 137 So.3d at 101 (Thibodeaux, C.J. dissenting in part)).

So.3d at 1126 (Weimer, J., dissenting). As noted earlier, those two issues were squarely presented to us in *Burgess I*. We answered the patient choice issue in favor of the patient. As to the other issue, this court, quoting Chief Judge Sanders's partial dissent in *Rebel*, held that the dispensing of prescription medication does not constitute "nonemergency diagnostic testing or treatment" and thus does not trigger the application of La. R.S. 23:1142.

Because *Lafayette Bone & Joint Clinic* is distinguishable from this case and because the Louisiana Supreme Court in that case failed to reach the two issues presented here, we find *Lafayette Bone & Joint Clinic* does not dictate any change in our prior holding in *Burgess I*.

### DECREE

For the foregoing reasons, we determine that *Lafayette Bone & Joint Clinic* does not change or alter our previous decision in *Burgess I*. Accordingly, we re-affirm our original decision.

**AFFIRMED**

**LOBRANO, J., DISSENTS WITH REASONS.**

**LOBRANO, J., DISSENTS WITH REASONS.**

I respectfully dissent from the majority opinion. I remain unconvinced that Louisiana law affords the employee an unfettered choice of pharmacy in all situations, and further, I do not find that a determination whether the employee is entitled to his choice of pharmacy ends the inquiry of whether payment of the disputed pharmacy expenses is due or in what amount.

La. R.S. 23:1203 provides in pertinent part:

A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. **Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs.**

B. The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, **whether in state or out of state, is limited to the reimbursement** determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, **as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less.** Any out-of-state provider is also to be subject to the procedures established under the office of workers' compensation administration utilization review rules.

(Emphasis added.)

Darvel Burgess introduced evidence of a pharmacy bill by Injured Workers' Pharmacy, an out-of-state provider with a Massachusetts address. The record before us lacks any evidence whether Injured Workers' Pharmacy fits the criteria for a permissible out-of-state provider under La. R.S. 23:1203(A–B) or any evidence of the reimbursement schedule set forth in La. R.S. 23:1034.2. I find that the Office of Workers' Compensation erred by failing to consider these issues. To the extent this circuit has now joined with the Second Circuit in holding that the employee is entitled to his choice of pharmacy, it must

be said that the employee's "choice of pharmacy is not boundless." *See Naron v. LIGA*, 49,996, p. 6 (La.App. 2 Cir. 9/9/15), 175 So.3d 475, 478 (finding the employee entitled to his choice of pharmacy but reversing the award of prescription medication expenses to an out-of-state pharmacy).

Further, this case is distinguishable from *Lafayette Bone & Joint Clinic v. Louisiana United Bus. SIF*, 2015–2137 (La. 6/29/16), 194 So.3d 1112. In *Lafayette Bone & Joint Clinic*, the issue was the applicability of La. R.S. 23:1142 to instances in which an in-state provider of pharmaceuticals incurred expenses without the consent of the employer. *See* 2015–2137, pp. 9–10; 194 So.3d at 1120. In the case *sub judice*, it is uncontested that Injured Workers' Pharmacy is an out-of-state provider. Thus, La. R.S. 23:1203(B) provides that the employer's obligation is limited to the reimbursement schedule.

Accordingly, I would reverse the award for the prescription medication expenses of Injured Workers' Pharmacy, and I would remand this matter to the Office of Workers' Compensation for determination of whether pharmacy expenses are due to Injured Workers' Pharmacy as an out-of-state provider, and if so, the amount of expenses due pursuant to the reimbursement schedule. *See, e.g.,* |₃*Savoy v. Cecil Perry Imp. Co.*, 96–889, p. 19 (La.App. 3 Cir. 2/5/97), 691 So.2d 692, 703, *as amended on reh'g* (La. App. 3 Cir. 4/7/97).