DREW, J.
| tin this workers’ compensation proceeding, Louisiana Insurance Guaranty Association (LIGA) appeals a judgment ordering it to pay $7,025.92 to Injured Workers Pharmacy (IWP) for prescription drugs that were provided to a claimant.
We reverse.
FACTS
Clenon Naron began receiving workers compensation benefits after he sustained injuries to his back resulting from a slip and fall in a freezer while working at a Sonic restaurant on July 24, 1999. LIGA eventually took over adjusting Naron’s claim.
Naron was provided with a prescription card from Corporate Pharmacy Services (CPS) to fill his prescriptions for medications related to his on-the-job injury. In 2009, Naron used the card to fill his prescriptions either in person at Fred’s Pharmacy or through the CPS mail order system. Naron was prescribed Oxycodone, *476 Lyrica, Tizanidine, and a Fentanyl patch at the time.
Naron had no problems- getting his prescriptions filled using the CPS card until February 1, 2010, when Fred’s declined to fill a prescription for him because his coverage had expired.
Naron then contacted his attorney, who referred him to IWP, which began mailing his prescribed medications to his home. On February 3, 2010, Naron’s attorney wrote a letter to Violet Hurst, the LIGA claims adjuster assigned to Naron’s claim. He attached a receipt for the $21.06 that Naron paid to Fred’s on February 1, 2010, for his medication, and a statement from the Fred’s pharmacist given to Naron on that date that [{.coverage had expired. LIGA was asked to reimburse Naron for that amount.
Except for a prescription for Lyrica that was filled by CPS on April 19, 2010, Naron used IWP exclusively between February and September of 2010. Naron began using his CPS card again in October of 2010, and he continued receiving his prescription medications at Fred’s until his workers compensation claim was settled in 2014.[1]
Lisa Zonghetti was the reimbursement manager for IWP. She recalled that IWP opened a file on Naron on February 17, 2010. Prescriptions for Fentanyl and Oxy-codone were called in on that date, and then 'shipped the next day from Massachusetts.
LIGA paid for the first invoice that it received from IWP. However, according to Zonghetti, LIGA told IWP on March 18, 2010, that Naron should be using his CPS card to fill his prescriptions. IWP did not pay heed to this as it did not believe that it was required to obtain preauthorization from LIGA before filling prescriptions for Naron.
IWP attempted to reach the LIGA adjuster to no avail in April and May before calling the adjuster’s supervisor. According to Zonghetti, the supervisor returned a call on June 8 and said LIGA was denying IWP’s invoices on Naron’s claim because IWP had not requested preauthorization. The supervisor reiterated the next month that LIGA would not pay IWP because IWP had not obtained preauthorization. IWP was unable-to speak |swith the supervisor or the' new adjuster on the file despite attempting to do so approximately four times over the next three months.
In all, IWP provided medications to Naron on 11 occasions from February to September of 2010.[2] IWP filed a disputed claim for compensation as the employee’s pharmacy against LIGA with the Office of Worker’s Compensation to recover the cost of providing the medications related to Naron’s work-related injury. In opposition, LIGA argued that (i) as payor it had the right to select the pharmacy of its choice to provide prescription drugs to Naron; (ii) as an- out-of-state provider IWP was not entitled, under La. R.S. 23:1203(A), to payment for the prescription drugs it provided to Naron, and (iii) under La. R.S. 23:1142, IWP could hot recover more than $750 from LIGA since- IWP had not obtained preauthofization.'
The WCJ ruled in favor of IWP and ordered LIGA to pay $7,025.92 to IWP for the prescription drugs it had provided to Naron. The WCJ concluded that LIGA *477 violated its duty under La. R.S. 23:1203(A) to furnish Naron with all necessary drugs by denying the timely availability of those drugs. The WCJ also concluded that because LIGA had denied benefits, preau-thorization from LIGA was not required under La. R.S. 23:1142.
LIGA appealed. It argued that it is not responsible for paying IWP because La. R.S. 23:1203 permits out-of-state providers to provide, medical services only when such care, services, and treatment are not reasonably available within Louisiana or when it can be provided for comparable costs. 14LIGA argued in the alternative that its liability should be capped at $750 because IWP did not seek or obtain preauthorization from LIGA.
DISCUSSION
The WCJ concluded that LIGA failed to meet its obligation under La. R.S. 23:1203(A) to furnish necessary drugs when Fred’s refused to fill his prescription and told him that his medication coverage had expired, as well as when LIGA refused coverage for Naron’s alternate choice of pharmacy. Therefore, according to the WCJ, LIGA faded to furnish necessary drugs and failed to meet the standard of availability.
The WCJ also concluded that there was no evidence showing correspondence to Naron that coverage had been reinstated with Fred’s. The WCJ found that IWP was authorized to provide services to Nar-on, and their services became a necessary element in fulfillment of La. R.S. 23:1203(A). The WCJ also noted that Naron had a right to change from Fred’s as his pharmacy, and that the IWP was a mail-order system like Corporate Pharmacy Systems.
LIGA argues that IWP. was not permitted under La. R.S. 23:1203 to supply prescription medications to Naron when there were available Louisiana pharmacies, and the cost of obtaining medications from those pharmacies was significantly less than what IWP charged for the same medications.
La. 23:1203 provides, in part:
A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedieal treatment recognized by the laws of this state as legal, and shall utilize | Bsuch state, federal, public, or private facilities as will provide the injured employee with such necessary services. Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs.
B. The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. Any out-of-state provider is also to be subject to the procedures established under the office of workers’ compensation administration utilization review rules.
The choice of pharmacy belonged to Naron.[3] In Brown v. KTBS, Inc., 42,847 (La.App.2d Cir.1/9/08), 974 So.2d 784, writ denied, 2008-0353 (La.2/15/08), 974 So.2d 1279, the parties disputed whether the workers’ compensation claimant could ob *478 tain a medically necessary wheelchair from her local vendor of choice, or whether it needed to be obtained from an out-of-town vendor of the employer’s choosing. This court recognized that while La. R.S. 23:1203 did not address which party had the right to choose the vendor for a reasonable and necessary medical device, it obligated the employer to reimburse a claimant of the lesser of the amount shown-in the fee schedule or the actual cost of a recommended medical device. Therefore, this court reasoned that under the circumstances | fiof the case, the claimant had the right to choose the providers of necessary drugs, supplies, and services.
Nevertheless, Naron’s choice of pharmacy is not boundless. La. R.S. 23:1203(A) provides that “[m]edical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs.” That provision applies to the employee as well as the payor. See Nelson v. Highland Ins. Co., 25,706 (La.App.2d Cir.3/30/94), 634 So.2d 941, where this court upheld the rejection of the claimant’s reimbursement request for the costs of treatment provided by two Mississippi doctors.[4]
IWP is clearly an out-of-state provider. Zonghetti testified that IWP has a valid pharmacy license in Louisiana, and is authorized to fill prescriptions in Louisiana. However, it ships the drugs from Massachusetts and does not have any personnel in Louisiana to do the actual dispensing of the drugs. It is equally clear that the services provided by IWP are reasonably available in Louisiana. Naron obtained his prescription drugs from Fred’s Pharmacy for approximately a year prior to switching to IWP, and he continued receiving them from Fred’s for several years after October of 2010.
Furthermore, IWP was not providing drugs at costs comparable to what Fred’s charged. Zonghetti explained that IWP billed at the state |7mandated fee schedule, and that Louisiana has one fee schedule for generic drugs and one for brand-name drugs. She further explained that the fee schedule is based on a certain code which determines the average wholesale price. Zonghetti also stated that a drug from Fred’s may have a different code than the same drug from IWP because different manufacturers make the same pill and each manufacturer assigns its own individual code. When Zonghetti was asked to explain why IWP charged $559.62 for a 90-day supply of Tizanidine in April 2010, while a 90-day supply of the same drug filled by CPS in January 2010 cost only $39.88, she only responded that IWP billed according to the state mandated fee schedule. It appears that IWP would dispense the more expensive brand name of a drug while Fred’s or CPS would dispense the generic brand of the same drug.
Even if LIGA is considered to have violated its duty under La. R.S. 23:1203(A) when Naron was unable to obtain his prescriptions on February 1, 2010, Naron was still bound by the constraints of that statute in regard to out-of-state providers. We note that LIGA paid for the first invoice submitted by IWP while also informing IWP that Naron should use his CPS *479 card to fill his prescriptions. IWP ignored this, as well as later refusals by LIGA to pay invoices, and continued to dispense prescription drugs to Naron.
It is apparent that the WCJ never considered whether IWP fit the criteria for a permissible out-of-state provider under La. R.S. 23:1203(A). Accordingly, the WCJ erred as a matter of law in ordering LIGA to pay for prescription drugs dispensed by IWP.
IsDECREE
At IWP’s costs, the judgment is REVERSED.
APPLICATION FOR REHEARING
Before BROWN, CARAWAY, DREW, PITMAN and GARRETT, JJ.
Rehearing denied.

. On January 9, 2014, the WCJ signed an order dismissing Naron’s claims against Sonic of Columbia and LIGA pursuant to a joint petition for settlement. Naron’s receipt and release acknowledged IWP’s outstanding charge for pharmaceuticals.

. IWP provided drugs on February 18, March 22, April 16 and 20, May 18, June 15, July 9 and 15, August 13, and September 20 and 28.

. We note two cases involving IWP from other circuits where the courts of appeal held *478 that the choice of pharmacy belonged to the employer. See Downs v. Chateau Living Ctr., 14-672 (La.App. 5th Cir. 1/28/15), 167 So.3d 875, and Bordelon v. Lafayette Consol. Govt., 2014-304 (La.App. 3rd Cir. 10/1/14), 149 So.3d 421, writ denied, 2014-2296 (La.2/6/15), 158 So.3d 816.

. At the time this case was decided, the provision read, “All such care, services, and treatment shall be performed at facilities within the state when available.’’