*Supreme Court of Louisiana*

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #036

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **29th day of June, 2017**, are as follows:

**BY JOHNSON, C.J.**:

2016-C-2267      DARVEL BURGESS v. SEWERAGE & WATER BOARD OF NEW ORLEANS (Office
                 of Workers' Compensation, District 8)

                 We remand this matter to the OWC for a determination of whether
                 IWP is a permissible out-of-state provider under La. R.S.
                 23:1203(A). If so, the OWC judge must then determine the amount
                 of reimbursement due after application of La. R.S. 23:1203(B),
                 Lafayette Bone & Joint, and La. R.S. 23:1142.
                 REVERSED AND REMANDED TO THE OFFICE OF WORKERS' COMPENSATION FOR
                 FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

                 JOHNSON, C.J., additionally concurs and assigns reasons.
                 HUGHES, J., dissents and will assign reasons.
                 GENOVESE, J., dissents and assigns reasons.

**SUPREME COURT OF LOUISIANA**

**No. 2016-C-2267**

**DARVEL BURGESS**

**VERSUS**
**SEWERAGE & WATER BOARD OF NEW ORLEANS**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FOURTH CIRCUIT, OFFICE OF WORKERS' COMPENSATION DISTRICT 8**

**JOHNSON, Chief Justice**

In this workers' compensation case, the claimant, Darvel Burgess, filed a Disputed Claim for Compensation after his employer, Sewerage & Water Board of New Orleans ("S&WB"), refused to pay a $13,110.02 outstanding bill for prescription medications from Injured Workers Pharmacy ("IWP"). The underlying legal issue is whether the injured employee is entitled to his choice of pharmacy, or whether that right belongs to the employer under the Louisiana Workers Compensation Act ("LWCA"). We granted this writ application to resolve a split in our circuit courts of appeal on this issue. After review, we hold the choice of pharmacy in a workers' compensation case belongs to the employer.

**FACTS AND PROCEDURAL HISTORY**

Darvel Burgess sustained a work-related injury on October 13, 2008. On September 18, 2012, Mr. Burgess filed a Disputed Claim for Compensation against his employer, S&WB, asserting in part a dispute over unpaid medical bills and entitlement to penalties and attorney fees. The matter was submitted to the Louisiana Office of Workers' Compensation ("OWC") solely on briefs and exhibits. The only disputed issues presented to the OWC judge were unpaid bills from IWP and Advanced Neurodiagnostic Center, as well as Mr. Burgess' entitlement to penalties

1

and attorney fees as a result of S&WB's failure to timely pay these bills.[1]

In his brief submitted to the OWC, Mr. Burgess asserted he is entitled to have all necessary and related medical treatment and prescriptions paid by his employer pursuant to La. R.S. 23:1203(A).[2] He argued the unpaid bills were related to treatment for his work-related injury, including medications prescribed by his treating physician, and as such were reasonable and necessary. Mr. Burgess further requested an award for penalties and attorney fees. S&WB argued it is not responsible for the outstanding IWP bill pursuant to La. R.S. 23:1142(B) because it notified all injured workers on October 10, 2011, that henceforth Corvel Caremark Pharmacy program was the approved provider for prescription services and failure of the injured worker to use the pharmacy card provided may result in non-payment of medications. Additionally, S&WB noted IWP was notified on April 12, 2012, that it was not an approved pharmacy provider for S&WB's workers' compensation claims and bills submitted by IWP would be denied.

On June 18, 2015, the OWC judge issued a judgment ordering S&WB to pay the outstanding $13,110.82 bill from IWP and all outstanding medical expenses owed to Advanced Neurodiagnostic Center "via the fee schedule." The OWC judge awarded Mr. Burgess a $2,000 penalty and $2,000 in attorney fees due to S&WB's failure to timely pay these bills. S&WB suspensively appealed the judgment, but only as to the IWP bill.

The court of appeal affirmed in a 2-1 decision. *Burgess v. Sewerage & Water Board of New Orleans*, 15-0918 (La. App. 4 Cir. 2/3/16), 187 So. 3d 49 ("*Burgess I.*"). In so doing, the Fourth Circuit concluded the choice of pharmacy belongs to the employee, not the employer. 187 So. 3d at 57. The court noted La. R.S. 23:1203(A)

---

[1] The Advanced Neurodiagnostic Center bill is not at issue in this court.

[2] For the full text of the statutes referred to in this section, see **DISCUSSION**, *infra*.

2

requires the employer to provide the employee with all necessary prescription medication. *Id.* at 51. The court of appeal referenced an Alabama case, *Davis Plumbing, Inc. v. Burns*, 967 So. 2d 94 (Ala. Civ. App. 2007), which held the choice of pharmacy under a similar Alabama statute belonged to the employee. *Id.* at 52. In addition, the court analyzed each Louisiana appellate court case on the subject and the differing outcomes. The court of appeal concluded that Louisiana is overwhelmingly a patient's choice state, observing that twenty-three other states expressly provide for employer choice of treating physician and three limit the employee's choice to a list provided by the state agency. *Id.* at 57. In addition, the court noted the LWCA contains no provision granting the employer the right to select the pharmacy that the employee must use. To the contrary, the LWCA obligates the employer to pay for the employee's reasonably necessary prescription medication and contains no exception for situations in which the employer objects to the pharmacy the employee selects. *Id.* The court also rejected S&WB's reliance on La. R.S. 23:1142(B) in an attempt to obtain the benefit of the choice of pharmacy, finding prescription medication is not part of "nonemergency diagnostic testing or treatment" under the statute, and further noting the purpose of the statute is to allow the employer to contest unnecessary or unreasonable medical care, not to allow employers to bargain shop. *Id.* at 57-58.

Judge Lobrano dissented, finding a determination of whether the employee is entitled to his choice of pharmacy did not end the inquiry of whether payment of the disputed pharmacy expenses is due or in what amount. *Id.* at 58. (Lobrano, J., dissenting). She noted IWP is an out-of-state provider, and La. R.S. 23:1203(A) provides in pertinent part, "[m]edical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and

3

treatment are not reasonably available within the state or when it can be provided for comparable costs." Further, La. R.S. 23:1203(B) limits the employer's obligation to "reimbursement...as determined under the reimbursement schedule...pursuant to R.S. 23:1034.2, or the actual charge made for the service, whichever is less." *Id.* at 58-59. Judge Lobrano found the record lacked any evidence of whether IWP fit the criteria for a permissible out-of-state provider under La. R.S. 23:1203(A) or any evidence of the reimbursement schedule set forth in La. R.S. 23:1034.2, and the OWC judge erred by failing to consider these issues. *Id.* at 59. Judge Lobrano opined the case should be remanded to the OWC to determine whether pharmacy expenses are due to IWP as an out-of-state provider, and if so, the amount of expenses due pursuant to the reimbursement schedule. *Id.*

S&WB sought supervisory review in this court. While the application was pending, this court rendered its opinion in *Lafayette Bone & Joint Clinic v. Louisiana United Business SIF*, 15-2137 (La. 6/29/16), 194 So. 3d 1112, which addressed, but did not decide, the choice of pharmacy issue. In that case, the claimants, who were injured in the course of their employment, were treated by physicians at the Lafayette Bone & Joint Clinic ("LB&J"). During the course of treatment, the physicians prescribed medications which were dispensed directly to claimants by LB&J employees. 194 So. 3d at 1115. On June 5, 2008, the workers' compensation payor, Louisiana United Business SIF ("LUBA"), sent letters to LB&J and its physicians, stating that LUBA would no longer pay for prescription medications directly dispensed by LB&J and directing LB&J physicians to issue future prescriptions to be filled by local retail pharmacies. Despite these notices, LB&J continued to dispense prescription medications directly to claimants throughout 2008 and to submit requests for reimbursement to LUBA. LUBA declined payment, citing its June 5, 2008 notice.

4

LB&J filed a disputed claim with the OWC, seeking to recover the costs of the medications dispensed, along with penalties and attorney fees. *Id.* After a trial on the merits, the OWC issued judgment in favor of LB&J, but ordered that recovery for medications dispensed after June 5, 2008, was limited by La. R.S. 23:1142(B) to $750 for each claimant. The OWC refused to award attorney fees and penalties in light of LUBA's notice to LB&J. The court of appeal reversed, awarded attorney fees and penalties, and removed the $750 cap. *Id*. at 1116.

The majority of this court reversed the court of appeal's modification of the $750 cap and otherwise affirmed. As a threshold matter, this court noted the split in the circuits on the choice-of-pharmacy issue, including *Burgess I*, but found the evidence presented did not raise a tenable employee choice issue because the evidence and testimony did not establish that the injured employees in these cases made an affirmative choice of LB&J as their prescription medication provider. *Id*. at 1117-18. However, this court further found the choice-of-pharmacy issue was not dispositive of the $750 cap issue:

> Nor would resolution of the choice-of-pharmacy issue be dispositive of the matters before the court. As we have stated, these cases hinge on LSA-R.S. 23:1142(B)'s admonition that a "health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee." In these cases, we conclude hereinafter that the plaintiff/health care providers did not have the consent of the payor, LUBA, even if they had obtained the consent of the injured employees, to dispense prescription medications after June 5, 2008.

*Id*. at 1118.

This court found LUBA's authorization for the employees to obtain medical treatment from LB&J physicians did not encompass the dispensing of prescription medications by LB&J. Specifically, this court reasoned:

> Even though, prior to June 5, 2008, LUBA may have obligated itself to reimburse the plaintiff/health care providers for prescription medications

> dispensed to injured employee patients during in-office medical treatment by LB & J physicians, LUBA's June 5, 2008 letter notified LB & J and its physicians that it would no longer pay for LB & J dispensed prescription medications; therefore, any ongoing consent to, or authorization of, in-office dispensing of prescription medications by LB & J physicians was terminated.

*Id*. at 1119. This court limited LB&J's recovery to $750 of medication costs after it was notified that it would not be reimbursed for medications it dispensed. *Id*.

In light of our decision in *Lafayette Bone & Joint*, this court granted S&WB's writ application and remanded the case to the court of appeal for reconsideration:

> Writ granted. The case is remanded to the Court of Appeal for re-briefing and reconsideration in accord with this Court's decision in *Lafayette Bone & Joint Clinic v. Louisiana United Business SIF, et al c/w Lafayette Bone and Joint Clinic v. Guy Hopkins Construction Co., Inc., et al.*, 15-2137 c/w 15-2138 (La. 6/29/16), __ So.3d __.

*Burgess v. Sewerage & Water Board of New Orleans*, 16-0416 (La. 9/16/16), 206 So. 3d 199.

On remand from this court, the court of appeal reaffirmed its original decision. *Burgess v. Sewerage & Water Board of New Orleans*, 15-0918 (La. App. 4 Cir. 11/23/16), 204 So. 3d 1014 ("*Burgess II*"). In particular, the court of appeal found *Lafayette Bone & Joint* was factually distinguishable from the instant case and thus inapposite. 204 So. 3d at 1016. As it did in *Burgess I*, the court found in favor of the employee on the choice-of-pharmacy issue. The court noted *Lafayette Bone & Joint* involved physician-dispensed medication, a factual situation within the scope of La. R.S. 23:1142(B), whereas this case involved an outside pharmacy dispensing medication. As such, the *Burgess II* court held that the dispensing of prescription medication does not constitute "nonemergency diagnostic testing or treatment" and thus does not trigger the application of La. R.S. 23:1142(B). *Id*. at 1016-18.

Judge Lobrano again dissented based on reasons similar to those in her original dissent regarding out-of-state providers. *Id*. at 1018. (Lobrano, J., dissenting).

6

Further, because IWP is an out-of-state provider, she also found the instant case distinguishable from *Lafayette Bone & Joint*, which addressed the applicability of La. R.S. 23:1142(B) to instances in which an in-state provider of pharmaceuticals incurred expenses without the consent of the employer. *Id.* at 1019.

S&WB filed a second writ application with this court, which we granted. *Burgess v. Sewerage & Water Bd. of New Orleans*, 16-2267 (La. 2/24/17), --- So. 3d ----.

**DISCUSSION**

In this case we are initially called upon to determine whether, under the LWCA, it is the injured employee or the employer who is entitled to choose the pharmacy to furnish prescription medications to the claimant. Our decision is premised on the proper interpretation of parts of the LWCA. Such considerations are questions of law and reviewed by this court under a *de novo* standard of review. *Catahoula Par. Sch. Bd. v. Louisiana Mach. Rentals, LLC*, 12-2504 (La. 10/15/13), 124 So. 3d 1065, 1071. After our review, we "render judgment on the record, without deference to the legal conclusions of the tribunals below. This court is the ultimate arbiter of the meaning of the laws of this state." *Id*.

The employer's duty under the LWCA to furnish prescription medication is set forth in La. R.S. 23:1203 which provides, in pertinent part:

> A. **In every case coming under this Chapter, the employer shall furnish all necessary drugs**, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs. (Emphasis added)
>
> B. The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited

7

to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. Any out-of-state provider is also to be subject to the procedures established under the office of workers' compensation administration utilization review rules.

While this statute obligates an employer "to furnish all necessary drugs" to the injured employee, it does not directly address who has the right to choose the pharmacy to dispense these drugs. Although this court did not reach the choice-of-pharmacy issue in *Lafayette Bone & Joint*, we did recognize "there is no explicit workers' compensation law directing that one party has the exclusive right to choose a prescription medication provider." 194 So. 3d at 1117.

Our courts of appeal have reached differing opinions on the choice-of-pharmacy issue. In addition to the Fourth Circuit's ruling in this case, the Second Circuit has also held the choice of pharmacy belongs to the employee. *See Naron v. LIGA*, 49,996 (La. App. 2 Cir. 9/9/15), 175 So. 3d 475. The *Naron* court reasoned that because La. R.S. 23:1203 does not address which party can choose a vendor, but does set forth the employer's obligation to reimburse a claimant for the lesser amount in the fee schedule or the actual cost for medication, the employee was free to choose the pharmacy from which he obtained his medication. *Id.* at 477-78.[3] By contrast, the Third and Fifth Circuits have held the choice of pharmacy belongs to the employer. *See Downs v. Chateau Living Center*, 14-0672 (La. App. 5 Cir. 1/28/15), 167 So. 3d 875; *Bordelon v. Lafayette Consolidated Government*, 14-0304 (La. App. 3 Cir. 10/1/14), 149 So. 3d 421, *writ denied*, 14-2296 (La. 2/6/15), 158 So. 3d 816; *Sigler*

_____

[3] However, the *Naron* court also recognized the employee's choice of pharmacy is not boundless, noting that La. R.S. 23:1203(A) provides that services can be provided by out-of-state providers when the services are not reasonably available within the state or when it can be provided for comparable costs. The court held that regardless of whether an employer is found to have violated its duty under La. R.S. 23:1203(A), the employee is still bound by the constraints of that statute in regard to out-of-state providers. 175 So. 3d at 478.

*v. Rand*, 04-1138 (La. App. 3 Cir. 12/29/04), 896 So. 2d 189. In *Sigler*, the Third Circuit found that the employer did not violate its obligation to the injured employee under La. R.S. 23:1203(A) to furnish necessary drugs simply because it chose to have the employee's prescriptions filled by a different pharmaceutical company. 896 So. 2d at 198.[4] Relying on *Sigler*, the *Bordelon* court held that the employer met his obligation under the LWCA to pay for medication by specifying the pharmacy the employee could use. 149 So. 3d at 423. The Fifth Circuit in *Downs* relied upon the Third Circuit's opinion in *Bordelon* to hold that an employer does not violate its duty under La. R.S. 23:1203(A) by choosing the pharmacy to be used by an injured employee. 167 So. 3d at 881.

After review of the law and the above jurisprudence, and considering the arguments of the parties, we hold the Third and Fifth Circuits have correctly determined the employer has the right to choose the pharmacy to furnish necessary prescription drugs to an injured employee in a workers' compensation case. Our analysis begins with the applicable statutory law.

> The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will, and, thus, the interpretation of legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law. The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be

---

[4] Although the court in *Sigler* found the employer had the right to choose the pharmacy, the court also found the employer violated its duties to the employee because the employer's choice of pharmacy was unable to provide the medication to the employee in a timely fashion. The court explained: "Implicit within the requirement of La. R.S. 23:1203(A) that the employer 'furnish all necessary drugs' is that those necessary drugs be provided timely. ... [The employer] effectively denied [the employee] the drugs needed for his compensable injury by denying the timely availability of those prescription drugs. In doing so, [the employer] violated its duty under La. R.S. 23:1203(A)." 896 So. 2d at 198-99.

9

made in search of the intent of the Legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur, and the text of the law as a whole. Further, the Legislature is presumed to act with full knowledge of well-settled principles of statutory construction.

*Catahoula Par. Sch. Bd.*, 124 So. 3d at 1073. With these principles in mind, we examine the relevant statutes.

As stated earlier, La. R.S. 23:1203(A) provides that "the employer shall furnish all necessary drugs." Nowhere in the statute does the legislature provide the employee with the right to choose a pharmaceutical provider from which to obtain the necessary prescription drugs. By contrast, the legislature has specifically delegated to the employee the choice of *physician* in La. R.S. 23:1121(B)(1), which provides "**the employee shall have the right** to select one treating **physician** in any field or specialty." (Emphasis added). Had the legislature intended the employee to have the choice of pharmaceutical provider in La. R.S. 23:1203(A), the legislature could have easily provided for that choice as it provided for the choice of physician in La. R.S. 23:1121. Moreover, the statutory entitlement in La. R.S. 23:1121(B)(1) to choose a physician cannot be read broadly to include an entitlement to choose a pharmacy. Notably, the legislature utilized the very specific term "physician," rather than the more expansive term "health care provider" which is defined in the LWCA to include pharmacies.[5]

In *Burgess I*, the court of appeal found it instructive "to consider the

---

[5] La. R.S. 23:1021(6) provides: "'**Health care provider' means a** hospital, a person, corporation, facility, or institution licensed by the state to provide health care or professional services as a physician, hospital, dentist, registered or licensed practical nurse, **pharmacist**, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, graduate social worker or licensed clinical social worker, psychiatrist, or licensed professional counselor, and any officer, employee, or agent thereby acting in the course and scope of his employment." (Emphasis added).

jurisprudence addressing the related issue of choice of physician before the Louisiana Legislature enacted La. R.S. 23:1121" in reaching its decision that the choice of pharmacy belongs to the employee. 187 So. 3d at 54. The court referenced a First Circuit case wherein the court "concluded that the choice of physician belonged to the employee because '[t]he trust and confidence needed in a patient-doctor relationship is important to successful treatment which can be best obtained if the injured employee has the choice of physician for treatment purposes.'" *Id*. (citing *Kinsey v. Travelers Ins. Co., Inc.*, 402 So. 2d 226, 228 (La. App. 1st Cir.1981)). The *Burgess I* court noted this same rationale-the patient's trust and confidence-has been applied in the context of determining whether the choice of pharmacy belongs to the employee, although the court did recognize appellate jurisprudence, such as *Sigler,* which found such rationale did not apply to a pharmacist. *Id*. The court of appeal affirmed its position in *Burgess II.*

Reliance on jurisprudence concerning choice of physician is misguided. Unlike La. R.S. 23:1121(B) governing choice of physician, the legislature has not afforded the employee an absolute right to select a pharmacy under La. R.S. 23:1203(A). This distinction is logical considering the importance of the doctor-patient relationship. Unlike a patient's personal relationship with his doctor, there is no meaningful difference relative to which pharmacy is used to dispense a prescription drug that would mandate employee choice under the LWCA. This distinction was recognized by the Third Circuit in *Sigler*, *supra*. The *Sigler* court distinguished its prior decision in *Louisiana Clinic v. Patin's Tire Service*, 98-1973 (La. App. 3 Cir. 5/5/99), 731 So. 2d 525, which concerned whether the employer had the right to choose the diagnostic facility to conduct the injured employee's MRI scan. In *Patin's*, the OWC judge found that an employee has no cause of action under the LWCA to choose the

diagnostic facility, relying on La. R.S. 23:1121(B) which only allows the employee the right to choose a treating physician. The Third Circuit reversed, finding the judge's reliance on La. R.S. 23:1121(B) to be misplaced. 731 So. 2d at 528. The court noted it was the treating physician, not the employee, who ordered the MRI and the employee was "not attempting to change treating physicians but to obtain a diagnostic test at his physician's instruction." *Id.* The court found no authority that allows the employer or insurer to dictate the place and physician to perform diagnostic testing ordered by a treating physician. Rather, the court found the check on the employee's testing is through La. R.S. 23:1034.2 and 23:1142(B), which place a monetary limit on the diagnostic testing. *Id.*

The *Sigler* court declined to apply the same reasoning to the choice of pharmacy. 869 So. 2d at 198. "Because the administration of medical diagnostic testing, the type of equipment used, and the interpretation of the results obtained from the testing involve individual skill levels and perhaps comfort levels for patients, we find that *Patin's* does not apply to the circumstances of this case. Unlike in the *Patin's* case, the medication Sigler obtained was the same regardless of which pharmaceutical company provided it." *Id.* We agree with the analysis of the *Sigler* court and reach the same conclusion in this case.

Additionally, the legislature has specifically directed that the laws contained in the LWCA be construed as follows:

> (1) The provisions of this Chapter are based on the mutual renunciation of legal rights and defenses by employers and employees alike; therefore, it is the specific intent of the legislature that workers' compensation cases shall be decided on their merits.

> (2) Disputes concerning the facts in workers' compensation cases shall not be given a broad, liberal construction in favor of either employees or employers; **the laws pertaining to workers' compensation shall be construed in accordance with the basic principles of statutory construction and not in favor of either employer or employee**.

12

(3) According to Article III, Section 1 of the Constitution of Louisiana, the legislative powers of the state are vested solely in the legislature; therefore, when the workers' compensation statutes of this state are to be amended, the legislature acknowledges its responsibility to do so. **If the workers' compensation statutes are to be liberalized, broadened, or narrowed, such actions shall be the exclusive purview of the legislature**.

La. R.S. 23:1020.1(D) (Emphasis added). To extend the legislatively-granted employee choice of treating physician to include the choice of pharmacy can only be accomplished by giving an impermissibly expansive reading to the provisions of La. R.S. 23:1203(A) and La. R.S. 23:1121, thus broadening the employee's rights in contravention of La. R.S. 23:1020.1(D).

Thus, while the injured employee is entitled to choose his treating physician under the LWCA, we hold the law does not provide the employee a right to choose a specific pharmaceutical provider. We therefore reverse the ruling of the court of appeal on this issue.

It is important to recognize that the LWCA gives the employee protections to ensure the employer satisfies its obligations under La. R.S. 23:1023. If an injured employee experiences any delays or other discernable deficiencies in filling his prescriptions through the employer-chosen pharmacy, constituting a violation of the employer's duty under La. R.S. 23:1203(A), the employee has a remedy for penalties pursuant to La. R.S. 23:1201(E).[6] *See Sigler*, 896 So. 2d at 198-99. In this case, there is no evidence S&WB violated its duty under La. R.S. 23:1203(A) by requiring Mr. Burgess to use a pharmacy included in the Corvel Caremark Pharmacy program.

We now turn to the $13,110.82 IWP bill for prescription medications it

---

[6] La. R.S. 23:1201(E) provides: "(1) Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof, if the provider of medical services is not utilizing the electronic billing rules and regulations provided for in R.S. 23:1203.2; (2) For those providers of medical services who utilize the electronic billing rules and regulations provided for in R.S. 23:1203.2, medical benefits payable under this Chapter shall be paid within thirty days after the employer or insurer receives a complete electronic medical bill, as defined by rules promulgated by the Louisiana Workforce Commission."

dispensed to Mr. Burgess from September 1, 2010, to December 7, 2012. Our resolution of the choice-of-pharmacy issue does not fully resolve the issue of whether S&WB is responsible for payment of the outstanding IWP bill. Based on the particular facts of this case, that determination also requires consideration of La. R.S. 23:1203(A) and (B), as well as La. R.S. 23:1142.

Notwithstanding who chooses the health care provider, La. R.S. 23:1203(A) allows for "medical care, services, and treatment" to be provided by out-of-state providers only "when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs." It appears undisputed by the parties that IWP is an out-of-state pharmacy. Additionally, the IWP bill in the record provides a Massachusetts address. Thus, to be a permissible provider under the LWCA, there must be a showing that the services IWP provides are not reasonably available in Louisiana *or* that IWP's services are provided for comparable costs to Louisiana providers. According to the record before us, this issue was not raised before nor considered by the OWC judge. The record contains no evidence whether IWP fits the statutory criteria in La. R.S. 23:1203(A). Because IWP, as an out-of-state provider, is bound by the constraints of La. R.S. 23:1203(A), we must remand this matter to the OWC for a determination of this issue.

Additionally, if IWP is found to be a permissible out-of-state pharmacy, the charges for medications it dispensed to Mr. Burgess would still be subject to the provisions of La. R.S. 23:1203(B), which limits reimbursement to "the mean of the usual and customary charges for such care, services as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less." Fees in excess of the reimbursement schedule are not recoverable against the employee, employer, or workers'

14

compensation insurer. La. R.S. 23:1034.2(D). Moreover, this court recognized in *Lafayette Bone & Joint* that La. R.S. 23:1034.2(D) leaves open "the possibility that medical fees, even though falling within the amounts set forth in the reimbursement schedule, may be deemed unreasonable, unnecessary, or not 'usual and customary,' and therefore not subject to compensation under certain circumstances." 194 So. 3d at 1121-22. This court further noted "the expression of legislative intent set forth in LSA-R.S. 23:1020.1 makes it clear that the reasonableness of medical costs is an important consideration." *Id.* at 1122. Thus, on remand, the OWC judge must consider whether IWP is a permissible out-of-state provider and, if so, whether the charges incurred were reasonable and within the guidelines referenced in La. R.S. 23:1203(B).

In the interest of judicial economy, and to fully instruct the OWC on remand should IWP be determined to be a permissible out-of-state provider, we also address the applicability of La. R.S. 23:1142(B), which provides:

> Except as provided herein, **each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee** as provided by regulation. Except as provided herein, **that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against** the employee or **the employer** or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider. (Emphasis added).

In *Lafayette Bone & Joint*, this court applied the provisions of La. R.S. 23:1142(B) to limit reimbursement to $750 for prescription medications dispensed directly by the treating physician's office without the employer/payor's consent. 194 So. 3d at 1118. In *Burgess II*, the court of appeal distinguished that factual situation and held the dispensing of prescription medications by a pharmacist, as opposed to a claimant's treating physician, did not constitute "nonemergency diagnostic testing and

15

treatment" under the statute. 204 So. 3d at 1017. We recognize dispensing medication is distinguishable from prescribing or administering medication. However, we find no logical reason to factually differentiate this case from *Lafayette Bone & Joint*. In both cases the healthcare provider sought reimbursement for the cost of prescription medications issued to the injured employee. The act of dispensing prescription medications is the same, regardless of whether the medications were provided by a pharmacy or a physician's office.

Although we did not fully analyze application of La. R.S. 23:1142(B) in *Lafayette Bone & Joint*, implicit in our ruling was an acknowledgment that the dispensing of prescription medications is encompassed in "nonemergency diagnostic testing or treatment" under the statute. While the statutory language does not expressly include a reference to prescription medication, we find the word "treatment" in the statute is broad enough to encompass a pharmacy dispensing prescription medication ordered by the claimant's treating physician as part of the claimant's treatment. Thus, we now explicitly hold La. R.S. 23:1142(B) is properly implicated in considering an employer/payor's obligation to pay prescription medication expenses in workers' compensations cases.

La. R.S. 23:1142(B) requires a health care provider to have the consent of the employee *and* the payor[7] in order to receive payment in excess of $750 for nonemergency care. The statutory requirement of "mutual consent" necessarily imputes some obligation on the part of the provider to obtain the consent of the employer/payor. La. R.S. 23:1142(B) does not supply a specific formula by which the payor is to signify his consent, and the issue of consent is necessarily determined based on the facts of each case. On remand, should IWP be determined to be a

[7] "Payor" is defined in R.S. 23:1142 as the entity responsible for the payment of an injured employee's medical treatment.

permissible out-of-state provider, the OWC judge must address the issue of consent considering the evidence in the record and applying the rationale of *Lafayette Bone & Joint*, to determine whether IWP is entitled to recover expenses in excess of $750.

Finally, we find the issue of penalties and attorney fees is not properly before this court. In its appeal to the Fourth Circuit, S&WB failed to assign as error or brief this issue.[8] Although the court of appeal affirmed the judgment of the OWC, the court did not directly address the penalties and attorney fees award. Therefore, we pretermit discussion of this issue. *See* Rule 2–12.4 of the Uniform Rules–Courts of Appeal; *State in Interest of J.M.*, 13-2573 (La. 12/9/14), 156 So. 3d 1161, 1164. *See also Boudreaux v. State*, 01-1329 (La. 2/26/02), 815 So. 2d 7.

## CONCLUSION

For the above reasons, we resolve the split in our circuit courts of appeal on the choice-of-pharmacy issue in favor of the employer. Relative to whether S&WB is responsible for payment of the outstanding IWP bill in this case, we remand this matter to the OWC for a determination of whether IWP is a permissible out-of-state provider under La. R.S. 23:1203(A). If so, the OWC judge must then determine the amount of reimbursement due after application of La. R.S. 23:1203(B), *Lafayette Bone & Joint*, and La. R.S. 23:1142.

## DECREE

**REVERSED AND REMANDED TO THE OFFICE OF WORKERS' COMPENSATION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

---

[8] S&WB did raise the issue in its second brief to the court of appeal following remand from this court. However, this was not an appeal from the OWC judgment. The parties were merely ordered by the court of appeal to submit briefs addressing this court's order relative to *Lafayette Bone & Joint*.

SUPREME COURT OF LOUISIANA

No. 2016-C-2267

DARVEL BURGESS

VERSUS
SEWERAGE & WATER BOARD OF NEW ORLEANS

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FOURTH
CIRCUIT, OFFICE OF WORKERS' COMPENSATION DISTRICT 8

**JOHNSON, Chief Justice**, additionally concurs and assigns reasons.

I write separately to express my opinion on this issue of consent pursuant to La.

R.S. 23:1142(B). As pointed out in the majority opinion, La. R.S. 23:1142(B) does

not supply a specific formula by which the payor is to signify his consent, and the

issue of consent is necessarily determined based on the facts of each case.

The record in this case is extremely limited, and the evidence relating to this

issue consists of four items:

1) the outstanding bill from IWP in the amount of $13,110.82 for prescription

medications dispensed to Mr. Burgess from September 1, 2010, to December 7, 2012;

2) a letter from S&WB dated October 10, 2011, sent to "All Injured Workers"
stating:

> Sewerage and Water Board has partnered with Corvel Caremark
> Pharmacy Program for all Injured Employees. This Pharmacy card will
> replace any pharmacy program that you may be currently using. It is
> your responsibility to purchase all medications related to your injury
> with the attached pharmacy card.
>
> Failure to adhere to this practice may result in non-payment of your
> Worker's Compensation medications.
>
> By your signature below you acknowledge that you will adhere to the
> Sewerage and Water Board's Workers' Compensation Pharmacy
> Program.

Mr. Burgess signed the letter on October 18, 2011.

1

3) a letter from S&WB to IWP dated April 12, 2012, stating:

Please be advised that your company is not an approved pharmacy provider for the Sewerage and Water Board of New Orleans ("Board") prescription claims. In October 2011, the Board provided each claimant with a prescription card and the employee is required to use the card for any and all prescription drugs. Therefore, your pharmacy should not accept prescriptions from the Board's injured workers. If any prescription bills are submitted by your company payment will be denied.

4) a letter from S&WB to IWP dated August 22, 2012, referencing two dates of service for Mr. Burgess, July 10, 2012, and August 2, 2012:

On October 10, 2011 all injured employees were notified and signed [an] agreement to adhere to [the] pharmacy program. On February 13, 2012 a letter was sent to Attorneys and your company was copied on this memo. Also, on April 12, 2012 a letter was issue[d] directly to your company informing you not to accept prescriptions from Sewerage and Water Board of New Orleans.

Sewerage and Water Board is no longer paying bills submitted from Injured Workers Pharmacy because we have a pharmacy program provide[d] for our injured workers, and your company is not an approved pharmacy provider. Therefore, your request for payment for Darvel Burgess is denied.

It is also relevant that, by S&WB's own admission, it paid approximately $12,000 to IWP for prescription expenses incurred by Mr. Burgess over a period of time prior to selecting the Corvel Caremark Pharmacy program.[1]

Considering the record, and applying the same rationale this court applied in *Lafayette Bone & Joint*, I would find IWP's recovery of expenses for medications dispensed to Mr. Burgess after April 12, 2012, is limited by La. R.S. 23:1142(B) to $750 because the medications were clearly dispensed by IWP without the consent of the payor, S&WB. Based on the particular facts of this case, I do not find the October 10, 2011, letter to Mr. Burgess relevant to the consent issue. It is undisputed that S&WB initially paid IWP's bill, thereby providing tacit consent to Mr. Burgess' use

---

[1] At oral argument before this court, counsel for S&WB affirmatively stated S&WB paid over $12,000 to IWP relative to Mr. Burgess' prescription expenses.

2

of IWP as a pharmacy provider. Based on the record, there is no evidence IWP was notified or otherwise aware of the withdrawal of that consent prior to the April 12, 2012 letter from S&WB. Thus, I find that until it received this notice, IWP had the consent of S&WB to dispense prescription medications to Mr. Burgess for purposes of La. R.S. 23:1142(B).

Furthermore, although IWP is entitled to reimbursement for prescriptions dispensed to Mr. Burgess prior to April 12, 2012, I note the charges for these medications are still subject to the reasonableness and cost limitations in La. R.S. 23:1203(B). Because there is no evidence in the record on this issue, the OWC must determine the amount of reimbursement due to IWP for charges incurred prior to April 12, 2012.

## SUPREME COURT OF LOUISIANA

## No. 2016-C-2267

## DARVEL BURGESS

## VERSUS

## SEWERAGE & WATER BOARD OF NEW ORLEANS

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FOURTH CIRCUIT, OFFICE OF WORKERS' COMPENSATION DISTRICT 8

**GENOVESE, Justice**, dissenting.

I respectfully dissent from the majority decision. Of particular concern is the judicial edict, without specific legislative authority, that the choice of pharmacy in a workers' compensation case belongs to the employer, disregarding the legislature's directive in La.R.S. 23:1020.1(D)(2) that the Louisiana Workers' Compensation Law shall not be construed "in favor of either employer or employee."

Louisiana Revised Statutes 23:1203(A) delineates the obligation of an employer to "furnish" an injured worker "all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal . . . ." It does not necessarily give the employer the right to choose the pharmacy. The key word in La.R.S. 23:1203 is "furnish." The dictionary definition of furnish is "to provide" or "to supply." It could be literally interpreted to mean the employer itself would have to provide/supply the necessary drugs, etcetera, to the employee. I seriously doubt that was the intent of the legislature. Employers cannot be deemed pharmacies. I view and interpret the word "furnish" to mean "to be responsible for," not be able to control, dictate, or choose the employee's drug provider.

*Lafayette Bone & Joint Clinic v. Louisiana United Business SIF*, 15-2137 (La. 6/29/16), 194 So.3d 1112, dealt with whether reimbursement was warranted for medications prescribed by physicians and dispensed by employees of the Lafayette

Bone & Joint Clinic, an issue which tested the applicability of La.R.S. 23:1142(B). Finding that the evidence did "not raise a tenable employee choice issue," this Court declined to address the choice-of-pharmacy question. *Id.* at 1117. There is no dispute in the instant matter that Injured Workers' Pharmacy is an out-of-state provider. Louisiana Revised Statutes La.R.S. 23:1203(B) specifies the employer's obligation under the reimbursement schedule.

Ready and quick access to medication is essential, and the employee should be able to choose his/her pharmacy. It is not inconceivable that the employer's pharmacist or the employer may insist upon the use of generic drugs or insist upon one form of medication over another. The majority decision in this case will subject the employee to the whim of the employer's pharmacy, and the law does not state such. Further, the law as written contemplates disputes over reasonableness and cost when the choice is made by the employee, it does not contemplate a scenario such as when the obligations of the employer imposed under La.R.S. 23:1203 are tested by a reasonableness and cost dispute with a pharmacy chosen by the employer. This is a matter for the legislature, whose duty it is to make the law—not the courts. It is injudicious to read the law in order to achieve a desired result. The law, as it stands today does not give the employer any preference over the employee to choose a pharmacy.