STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 0260

STEPHANIE CORONA

VERSUS

LOUISIANA CORRECTIONAL INSTITUTE FOR WOMEN

Judgment Rendered:  NOV 0 6 2020

* * * * * *

On Appeal from the Office of Workers' Compensation
In and for the Parish of East Baton Rouge
District 5
State of Louisiana
Docket No. 17-02482

Honorable Jason Ourso, Judge Presiding

* * * * * *

Michael L. Hebert                Counsel for Plaintiff/Appellee
Denham Springs, Louisiana        Stephanie Corona


John J. Kelley              .     Counsel for Appellant
William David Coffey             State of Louisiana through the
Baton Rouge, Louisiana           Department of Public Safety and
                                 Corrections, Louisiana Correctional
                                 Institute for Women

* * * * * *

BEFORE:  GUIDRY, McCLENDON, AND LANIER, JJ.

**McCLENDON, J.**

In this workers' compensation case, the defendant appeals a judgment finding it responsible for the costs of prescriptions dispensed to the plaintiff after the prescription provider was informed that the prescription provider was no longer authorized to dispense the medication directly to the worker. For the reasons that follow, we reverse.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Stephanie Corona, was injured on September 30, 1998, while in the course and scope of her employment with the defendant, the State of Louisiana, through the Department of Public Safety and Corrections, Louisiana Correctional Institute for Women (State). As a result of her accident, the State has paid and continues to pay Ms. Corona workers' compensation benefits.

On April 24, 2017, Ms. Corona filed a Disputed Claim for Compensation, asserting that the State was denying her medications and her choice of physician, as well as alleging a dispute over benefits and medical bills. Ms. Corona also sought penalties and attorney fees. Thereafter, on July 3, 2017, Ms. Corona supplemented and amended her claim seeking payment by the State for unpaid invoices for prescription medication obtained through the Injured Workers' Pharmacy (IWP).

On July 24, 2018, the parties entered into a Consent Judgment, whereby they settled all matters with the exception of the issue of the contested, outstanding invoices from IWP. Also on that date, the Office of Workers' Compensation (OWC) signed an order in accordance with the agreement.

Following a trial on the merits of the remaining disputed issue on October 8, 2019, the OWC ruled in favor of Ms. Corona, finding that the State was responsible for the payment of medication prescriptions in the amount of $43,807.38, dispensed and billed by the IWP, together with legal interest and costs. The OWC held that the State was obligated to pay the IWP bills because the State had no statutory authority to mandate that IWP use the billing process of Sedgwick Claims Management Services, Inc. (Sedgwick). Further, the OWC determined that Ms. Corona's claims were reasonably controverted by the State, and, therefore, no penalties or attorney fees

2

were awarded. The OWC's judgment was signed on October 18, 2019, and the State appealed.

## STANDARD OF REVIEW

In this case, the pertinent facts are undisputed, and the issue concerns a question of law. The scope of appellate review for an issue of law is simply to determine whether the trial court's interpretive decision is legally correct; *i.e.,* whether the trial court applied the law appropriately. Appellate courts owe no deference to the legal conclusions of the trial court. **Voisin v. International Companies & Consulting, Inc.,** 05-0265 (La.App. 1 Cir. 2/10/06), 924 So.2d 277, 279, <u>writ denied</u>, 06-1019 (La. 6/30/06), 933 So.2d 132; **R. L. Hall and Associates, Inc. v. Brunt Const., Inc.,** 15-0192 (La.App. 1 Cir. 11/9/15), 2015 WL 6951252, at *2.

## DISCUSSION

In its appeal, the State contends that the OWC legally erred when it ruled that the State was responsible for payment of prescription bills because it had no authority to mandate that IWP use the State's prescription billing process. The State maintains that it has no liability for the IWP bills because Ms. Corona and IWP were notified by Sedgwick, in a letter dated July 14, 2016, that Sedgwick would no longer authorize payment for medications filled directly through IWP, since Ms. Corona had been issued a prescription card by Sedgwick to fill prescriptions. Because the State did not consent to IWP's dispensing of medication directly to Ms. Corona, the State argues that it is not responsible for payment of the disputed billings. According to the State, this issue was decided in **Burgess v. Sewerage & Water Board of New Orleans**, 16-2267 (La. 6/29/17), 225 So.3d 1020, 1028, wherein the Louisiana Supreme Court held that the injured employee does not have a right to choose a specific prescription provider. Therefore, the State argues that pursuant to **Burgess**, and the statutes discussed therein, the State was obligated to pay no more than $750.00 for nonemergency care, and the OWC erred as a matter of law when it ruled to the contrary.

In the **Burgess** case, the claimant, like Ms. Corona herein, was notified that he was required to use a specific prescription plan and prescription card chosen by the employer for future prescriptions. The claimant was also notified that failure to follow

3

the procedure might result in nonpayment of workers' compensation benefits. Thereafter, the employer notified the claimant's prescription carrier that it was no longer an approved provider and that future bills would no longer be paid. The OWC and fourth circuit both found that the employer was responsible for the balance. **Burgess**, 225 So.3d at 1022.

The supreme court, granting writs to resolve a split among the circuits, reversed, specifically holding that the choice of pharmacy in a workers' compensation case belongs to the employer. **Burgess**, 225 So.3d at 1021. The supreme court recognized that an employer's duty under the Louisiana Workers' Compensation Act (LWCA) to furnish prescription medication is set forth in LSA-R.S. 23:1203, which provides, in pertinent part that "[i]n every case coming under this Chapter, the employer shall furnish all necessary drugs."[1] However, the supreme court determined that nowhere in LSA-R.S. 23:1203 does the legislature provide the employee with the right to choose a pharmaceutical provider from which to obtain the necessary drugs. The supreme court specifically stated that while the injured employee is entitled to choose his or her treating physician under the LWCA, the law does not provide the employee a right to choose a specific pharmaceutical provider.[2] **Burgess**, 225 So.3d at 1028.

---

[1] Louisiana Revised Statutes 23:1203A and B provide:

> A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs.

> B. The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. Any out-of-state provider is also to be subject to the procedures established under the office of workers' compensation administration utilization review rules.

[2] Importantly, the supreme court recognized that the LWCA gives the employee protections to ensure the employer satisfies its obligations under LSA-R.S. 23:1203, stating that if an injured employee experiences any delays or other discernable deficiencies in filling his prescriptions through the employer-chosen pharmacy, constituting a violation of the employer's duty under LSA-R.S. 23:1203A, the employee has a remedy for penalties pursuant to LSA-R.S. 23:1201E. **Burgess**, 225 So.3d at 1028. In this matter, we note that Ms. Corona did not appeal or answer the appeal and, therefore, the issue of penalties and attorney fees is not before this court.

Moreover, the supreme court recognized in **Burgess** that the dispensing of prescription medications is encompassed in the "nonemergency diagnostic testing or treatment" language in LSA-R.S. 23:1142B, finding the word "treatment" broad enough to encompass a pharmacy dispensing prescription medication ordered by the injured employee's treating physician as part of the employee's treatment. Accordingly, the supreme court explicitly held that LSA-R.S. 23:1142 is properly implicated in considering an employer's obligation to pay prescription medication expenses in workers' compensation cases. **Burgess**, 225 So.3d at 1030. We find that the supreme court's holding in **Burgess** is broad enough to encompass the prescription benefit service under the facts of this case.[3]

Louisiana Revised Statutes 23:1142B(1)(a) provides, in pertinent part, that a health care provider "may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee."[4] Thus, the statute requires a health care provider to have the consent of the employee *and* the payor in order to receive payment in excess of $750 for nonemergency care. **Burgess**, 225 So.3d at 1030.

In this matter, Ms. Corona and IWP were notified by letter that Sedgwick would no longer authorize payment for the medications dispensed by IWP effective July 14, 2016. The letter also provided that Sedgwick provided a prescription benefit service to all injured employees and that Ms. Corona had been provided a copy of the pharmacy card, which enabled her to fill prescriptions in a timely manner at a large selection of local pharmacies without incurring any out-of-pocket expenses. At trial, Lisa Vincent, Sedgwick's litigation consultant, testified that besides the written notification, she also called IWP more than once and gave it "several warnings" to bill through Helios, the

---

[3] We note that the prescription service in this matter included Ms. Corona's choice of pharmacy, IWP.

[4] Louisiana Revised Statutes 23:1142B(1)(a) provides:

> **Nonemergency care.** (1)(a) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.

prescription service. She also stated that she provided IWP the necessary information on "multiple occasions" to do so. Nevertheless, IWP continued to dispense prescriptions directly to Ms. Corona and bill the State. Thereafter, Sedgwick paid to IWP the $750 due for nonemergency diagnostic testing or treatment pursuant to LSA-R.S. 23:1142B(1)(a).

Because the State notified Ms. Corona and IWP that it did not consent to the dispensing of prescription medication by IWP directly to Ms. Corona after July 14, 2016, any ongoing consent to or authorization of dispensing of prescriptions by IWP directly to Ms. Corona was terminated after that date. Therefore, the State was not responsible for any unpaid invoices, in excess of the $750 previously paid, after July 14, 2016, that were not submitted through the prescription benefit service. See **Lafayette Bone & Joint Clinic v. Louisiana United Business SIF**, 15-2137 (La. 6/29/16), 194 So.3d 1112, 1118-19. Accordingly, the OWC legally erred in finding otherwise.

## CONCLUSION

Considering the above, we reverse the October 18, 2019 judgment of the OWC. Costs of this appeal are assessed to the plaintiff, Stephanie Corona.

**REVERSED.**

6